# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| POTELCO, INC., | No. 46256-7-II |
| Appellant, | |
| v. | |
| DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

SUTTON, J. —The Department of Labor and Industries (Department) cited Potelco Inc., (Potelco) for violating three Washington Industrial Safety and Health Act (WISHA)[1] safety regulations related to flagging operations at two worksites. The Board of Industrial Insurance Appeals (Board) affirmed the Department's citations and Potelco appeals. Potelco argues that the Board lacked substantial evidence to support its findings that flaggers at Potelco's Bremerton worksite violated WAC 296-155-305(9)(b) and flaggers at Potelco's Bremerton and Bainbridge Island worksites violated WAC 296-155-305(8)(a). Potelco also argues that the Board erred in applying WAC 296-155-305(8)(c) because the regulation is unconstitutionally vague and effectively holds Potelco strictly liable for actions by its temporary employees hired from Labor Ready, a third party vendor. We hold that substantial evidence supports the Board's challenged findings of fact and those findings support the Board's conclusions of law that flaggers at Potelco violated WAC 296-155-305(9)(b) at its Bremerton worksite and violated WAC 296-155-305(8)(a)

---

[1] Ch. 49.17 RCW.

at both its Bremerton and Bainbridge Island worksites. We also hold that WAC 296-155-305(8)(c) is not unconstitutionally vague when applied to Potelco's conduct at the Bremerton and Bainbridge Island worksites because Potelco was an employer in control of the flaggers at both worksites. We affirm the Board's order.

## FACTS

Potelco is an electrical company that builds transmission lines and, at times, requires flaggers at its worksites to control traffic. Potelco hires flaggers as temporary employees from Labor Ready, a third party vendor. In October 2011, at Potelco's request, Labor Ready dispatched flaggers to two of Potelco's worksites in Bremerton and Bainbridge Island.

## I. BREMERTON WORKSITE

At its Bremerton worksite, the flaggers set up a series of three advanced warning signs on the road adjacent to where the flaggers were working to provide drivers with advanced notice of the flaggers and the worksite. Two compliance inspectors for the Department inspected Potelco's Bremerton worksite in October 2011. When they visited the worksite, the inspectors saw a flagger positioned in the roadway directly beside the advanced flagger ahead warning sign. The sign provided no advanced warning to motorists that there was a flagger ahead. The flagger stood in the lane of traffic allowing for the potential of being struck by a moving vehicle. One of the inspectors recommended citing Potelco for violating WAC 296-155-305(9)(b), which requires an

employer to ensure that flaggers are standing either on the shoulder adjacent to the road or on the road in the closed lane prior to the point where road users would come to a stop.[2]

One inspector concluded that the sign placement violated WAC 296-155-305(8)(c), which requires a "three sign advance warning sequence on all roadways" when a flagging operation is used, because the sign was not in advance of the flagger.[3] The inspector recommended issuing the

---

[2] WAC 296-155-305(9) provides in part,

> Employers, responsible contractors and/or project owners must make sure that:
> (a) Flagger stations are located far enough in advance of the work space so that the approaching road users will have sufficient distance to stop before entering the work space. . . .
> (b) Flaggers stand either on the shoulder adjacent to the road user being controlled or in the closed lane prior to stopping road users. A flagger must only stand in the lane being used by moving road users after road users have stopped.

The regulation also provides a table designating that, in speed zones of 25 miles per hour, the minimum distance between flagger stations and the work space must be a minimum of 55 feet, but that "[t]his spacing may be reduced to fit roadway and worksite conditions. Distances greater than those listed in the table are acceptable." WAC 296-155-305(9)(a).

[3] WAC 296-155-305(8) provides in part,

> Advance warning signs.
> (a) Employers must provide the following on all flagging operations:
> • A three sign advance warning sequence on all roadways with a speed limit below 45 mph.
> • A four sign advance warning sequence on all roadways with a 45 mph or higher speed limit.
> (b) Warning signs must reflect the actual condition of the work zone. When not in use, warning signs must either be taken down or covered.
> (c) Employers must make sure to follow Table 1 for spacing of advance warning sign placement.

The regulation also provides a table designating that distances between advanced warning signs should be no less than 100 feet, but that "[t]his spacing may be reduced in urban areas to fit roadway conditions." WAC 296-155-305(8)(c). The table further provides, "If terrain does not allow a motorist to see the flagger from the "flagger ahead" sign, the distance between the flagger and the sign must be shortened to allow visual contact, but in no case can the distance be less than [100 feet]." WAC 296-155-305(8)(c).

citation as a "serious violation"[4] because Potelco's failure to ensure proper advance warning sign spacing endangered the flagger's health and safety and because Potelco has previously been cited for a similar violation.

Potelco's foreman, Larry Hensley, supervised the worksite on the day of the inspection and, after the inspectors advised him of the flagging violations, Hensley stopped work at that site. Based on the inspectors' recommendations, the Department issued Potelco Citation No. 315583005 (the Bremerton citation) for a serious violation of WAC 296-155-305(8)(c), which requires 100 feet of space between advance warning signs, and a serious violation of WAC 296-155-305(9)(b), which requires flaggers to stand on the shoulder adjacent to the road user being controlled or in the closed lane prior to stopping road users.

## II. BAINBRIDGE ISLAND WORKSITE

In October 2011, after receiving an anonymous referral, the Department also inspected Potelco's Bainbridge Island worksite at Winslow Way and Madison Avenue, South.[5] The Department's inspector observed that Potelco's Bainbridge Island worksite did not have the

---

[4] RCW 49.17.180 mandates the assessment of a penalty against an employer when a proven violation is "serious." A "serious violation" of a WISHA regulation is defined as,

> [A] serious violation shall be deemed to exist in a work place if there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use in such workplace, unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation.

RCW 49.17.180(6). The Department has the burden of proving both the existence of the elements of a "serious violation" and the existence of those additional elements of a serious violation enumerated in RCW 49.17.180(6).

[5] The speed limit at the site was 25 mph.

required three advance warning signs to warn motorists of the presence of flaggers. The inspector also observed that there was no signage in two of the directions approaching the worksite, and that the other two directions had one sign each instead of the minimum of three advance warning signs required from each direction according to WAC 296-155-305(8)(a).

Other contractors were performing work several blocks away, and those contractors also erected advanced warning signs. Hensley, Potelco's foreman, also supervised work at the Bainbridge Island worksite. Hensley testified at the Board hearing that he considered all of the area being worked on Winslow Way as one jobsite, but conceded that the other contractors were not responsible for conducting Potelco's traffic control. Based on this investigation, the Department issued Potelco Citation No. 315249847 (the Bainbridge Island citation) for a repeat serious violation of WAC 296-155-305(8)(a) for failing to establish a series of three advance warning signs in each direction of Potelco's worksite.

Based on the inspectors' recommendations, the Department cited Potelco twice for three WISHA safety violations at the Bremerton and Bainbridge Island worksites and assessed three monetary penalties. The Department found that (1) the spacing between advanced warning signs at Potelco's Bremerton worksite was not adequate for an urban street, (2) a Labor Ready flagger stood in the lane of traffic at Potelco's Bremerton worksite prior to road users coming to a stop, and (3) there were not three advanced warning signs as required at Potelco's Bainbridge Island worksite. Potelco appealed both citations to the Board, and the industrial appeals judge (ALJ), who conducted the Board hearing, affirmed in part the two citations,[6] ruling that, based on the

---

[6] The ALJ dismissed two traffic plan violations and the Department did not challenge their dismissal.

"economic realities" test,[7] Potelco was an employer liable for the violations at both worksites. Board Record (BR) at 32. And also ruled that Potelco failed to (1) ensure that its flaggers did not stand in the roadway, thereby exposing the flaggers to the hazards of oncoming drivers, (2) place adequate advance warning signs at its Bremerton worksite, and (3) place adequate advance warning signs at its Bainbridge Island worksite.

Potelco petitioned for review of both citations before the full Board. The Board denied review, adopting the ALJ's proposed decision as its final decision and order. Potelco appealed to superior court. The superior court affirmed the Board, determining that Potelco failed to show that the Board erred in making its factual findings or legal conclusions. Potelco appealed to this court, challenging the Board's findings of fact 2-3 and 12-13, and conclusions of law 2, 4, 7-8 in the Board's Decision and Order. They read as follows in pertinent part,

Findings of Fact

. . . .

2. [O]n October 11, 2011, in Bainbridge Island, Washington, Potelco and Labor Ready employees of [sic] were working at the intersection of Winslow Way and Madison Ave., South. The Potelco workers were repairing a transmission pole. Labor Ready employees were flagging traffic at the worksite. Potelco failed to place three advance warning signs on each of the four roads approaching the intersection of Winslow Way and Madison Ave., South. As a result, these employees were exposed to a hazard of being struck by passing vehicles at the worksite.

3. [A] substantial probability existed that the Potelco and Labor Ready employees exposed to the hazard described in (2) above would be injured, and that if harm resulted, it would be serious physical harm, including the possibility of fractures, paralysis, or death.

---

[7] In *In re Skills Resource Training Center*, No. 95 W253, 1997 WL 593888, at *4 (Wash. Bd. of Indus. Ins. Appeals Aug. 5, 1997), the Board outlined a seven factor "economic realities" test used to determine a worksite employer. The test focuses on the practical reality of who controlled contractors at a particular worksite in order to determine who is responsible for regulatory compliance.

. . . .

12. [O]n December 21, 2011, in Bremerton, Washington, Potelco and Labor Ready employees of [sic] were working near 645 4th Street. The Potelco workers were pulling new wire, underground, from vault to vault. Labor Ready employees were flagging traffic at the worksite. A flagger stood in the roadway next to the "flagger ahead" sign. As a result, these employees were exposed to a hazard of being struck by passing vehicles at the worksite.

13. [A] substantial probability existed that the Potelco and Labor Ready employees exposed to the hazard described in (12) above would be injured, and that if harm resulted, it would be serious physical harm, including the possibility of fractures, paralysis, or death.

Conclusions of Law

. . . .

2. [O]n October 11, 2011, Potelco committed a repeat serious violation of WAC 296-155-508(8)(a) . . . .[8]

. . . .

4. [O]n December 21, 2011, Potelco committed a serious violations [sic] of WAC Nos. 296-155-508(8)(c) and 296-155-305(9)(b) . . . .[9]

. . . .

7. [The Bainbridge Island citation] No. 315249847 . . . is affirmed as modified. . . .

8. [The Bremerton citation] No. 315583005 . . . is affirmed as modified. . . .

BR at 37-38, 40-41.

The Board's order also included the following unchallenged finding of fact,

18. [O]n December 21, 2011, in Bremerton, Washington, Potelco and Labor Ready employees of [sic] were working near 645 4th Street. The Potelco workers were pulling new wire, underground, from vault to vault. Labor Ready employees were flagging traffic at the worksite. A flagger stood in the roadway next to the "Flagger Ahead" sign. As a result, these employees were exposed to a hazard of being struck by passing vehicles at the worksite.

BR at 39.

_____

[8] Citation No. 315249847 cites a violation of WAC 296-155-305(8)(a), conclusion of law 2 incorrectly states -508(8)(a).

[9] Citation No. 315583005 cites a violation of WAC 296-155-305(8)(a), conclusion of law 4 incorrectly states -508(8)(a).

ANALYSIS

The Department cited Potelco twice for committing three WISHA violations, two violations at the Bremerton worksite and one violation at the Bainbridge Island worksite. Substantial evidence supported the Board's challenged findings of fact, which in turn support the Board's conclusions of law that Potelco's flaggers committed the cited WISHA violations, and that Potelco, using Labor Ready flaggers, directed and controlled traffic at its Bremerton and Bainbridge Island worksites. Accordingly, we affirm.

## I. STANDARD OF REVIEW

The purpose of WISHA is to assure, insofar as may be reasonably possible, safe and healthful working conditions for every person working in the state of Washington. RCW 49.17.010. As a remedial statute, WISHA and its regulations are liberally construed to carry out its purpose. *See Elder Demolition, Inc. v. Dep't of Labor & Indus.*, 149 Wn. App. 799, 806, 207 P.3d 453 (2009).

The Department is charged with promulgating regulations under WISHA and, "when the Department charges an employer with a WISHA regulation violation, the Department bears the initial burden of proving the violation occurred." *Pilchuck Contractors, Inc. v. Dep't of Labor & Indus.*, 170 Wn. App. 514, 517, 286 P.3d 383 (2012) (quoting *Express Constr. Co. v. Dep't of Labor & Indus.*, 151 Wn. App. 589, 597, 215 P.3d 951 (2009)). If the Department charges a "serious" WISHA violation, as it did here, the Department must prove as part of its prima facie case:

(1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known

8

of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.

*Pilchuck*, 170 Wn. App at 518 (quoting *Express Constr.*, 151 Wn. App. at 597-98). In a WISHA appeal, we review the Board's decision directly based on the record before the Board. *Pilchuck*, 170 Wn. App. at 516. And we review the Board's findings of fact to determine whether they are supported by substantial evidence in the record as a whole and whether those findings support the conclusions of law. *Pilchuck*, 170 Wn. App. at 516. The Board's findings of fact are conclusive if substantial evidence supports them. *Elder Demolition*, 149 Wn. App. at 806. "Substantial evidence is evidence 'in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.'" *Pilchuck*, 170 Wn. App. at 517 (quoting *J.E. Dunn NW., Inc. v. Dep't of Labor & Indus.*, 139 Wn. App. 35, 43, 156 P.3d 250 (2007)). Under the substantial evidence standard of review, our review is limited to the examination of the record and we will not reweigh the evidence. *Raum v. City of Bellevue*, 171 Wn. App. 124, 151, 286 P.3d 695 (2012), *review denied*, 176 Wn.2d 1024 (2013). Unchallenged findings of fact are verities on appeal. *Nelson v. Dep't of Labor & Indus.*, 175 Wn. App. 718, 723, 308 P.3d 686 (2013).

We give substantial weight to an agency's interpretation within its area of expertise and we will uphold that interpretation if it is a plausible construction of the regulation and not contrary to legislative intent. *J & S Servs., Inc. v. Dep't of Labor & Indus.*, 142 Wn. App. 502, 506, 174 P.3d 1190 (2007).

We review issues of statutory interpretation de novo. *In re the Interest of J.R.*, 156 Wn. App. 9, 15, 230 P.3d 1087 (2010). We look to the statute's plain language in order to fulfill our obligation and give effect to the legislature's intent. *Thompson v. Wilson*, 142 Wn. App. 803, 812,

175 P.3d 1149 (2008). If a statute or regulation is unambiguous, and is subject to only one reasonable interpretation, our inquiry ends. *State v. K.L.B.*, 180 Wn.2d 735, 739, 328 P.3d 886 (2014). An ambiguity exists if there is more than one reasonable interpretation of the regulation, and "we 'may resort to statutory construction, legislative history and relevant case law.'" *Columbia Physical Therapy, Inc. v. Benton Franklin Orthopedic Assocs., PLLC*, 168 Wn.2d 421, 433, 228 P.3d 1260 (2010) (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

Constitutional challenges are questions of law that we review de novo. *LK Operating, LLC v. Collection Group, LLC*, 181 Wn.2d 48, 66, 331 P.3d 1147 (2014). A party challenging a statute has the burden of proving it is unconstitutional beyond question. *Islam v. Dep't of Early Learning*, 157 Wn. App. 600, 608, 238 P.3d 74 (2010).

## II. BAINBRIDGE ISLAND WORKSITE

Potelco challenges the Board's findings of fact 2 and 3, and the Board's conclusions of law 2 and 7, arguing that the Board erred in affirming the Bainbridge Island citation because Potelco did not violate WAC 296-155-305(8)(a) by failing to establish a series of three advance warning signs in each direction from the worksite. Potelco argues that it complied with the plain language of WAC 296-155-305(8)(a) because, even if it did not place all the required signs, there were already sufficient advance warning signs around the Bainbridge Island worksite and, thus, the Board erred in affirming the Bainbridge Island citation. We hold that substantial evidence supports the Board's findings of fact 2 and 3, and that the Board's findings support its conclusions of law 2 and 7 that Potelco violated WAC 296-155-305(8)(a) when it failed to establish the required three

advanced warning signs in each direction of the worksite, and when it allowed a flagger to work in a roadway.

Potelco argues that, because workers with other flagging operations in the vicinity had erected advanced warning signs, Potelco did not violate the regulation when it relied on other workers' signage to satisfy WAC 296-155-305. In support of its argument, Potelco asserts that (1) the regulation is silent as to whether separate roadway flagging operations may rely on each other's signage and (2) the Federal Highway Administration's Manual on Uniform Traffic Control Devices (MUTCD), adopted by WAC 296-155-305, states that "[t]he use of warning signs should be kept to a minimum as the unnecessary use of warning signs tends to breed disrespect for all signs." Br. of Appellant at 19-20 (quoting MUTCD § 2C.02). Potelco argues that the MUTCD's guidance discourages signage for a worksite when nearby worksites informed drivers of flagging operations and, thus, its interpretation of the regulation should prevail.

Potelco does not dispute that the advanced sign placement requirement in WAC 296-155-305(8)(a) applied to its worksite; nor does Potelco dispute that it failed to place three advance warning signs on all roadways approaching its worksite. The plain language of WAC 295-155-305(8)(a) states that, on all flagging operations, "[e]mployers must provide . . . [a] three sign advance warning sequence on all roadways with a speed limit below 45 mph." The Board found that the Department's inspector observed two streets entering the intersection had one warning sign, and two streets had no warning signs. The record also includes the Board's finding that Potelco's worksite supervisor observed,

> [F]our warning signs placed north of the intersection . . . . South of the intersection, another worksite was established, about a block away, with three warning signs. No other worksite was located east of the intersection . . . . Four warning signs were

placed in that direction. Multiple worksites were present west of the Potelco worksite. The other worksites had three warning signs. The Labor Ready flagger placed an additional three warning signs closer to the Potelco worksite.

BR at 28.

The regulation plainly required the employer—here, Potelco—to provide the advance warning signs in each direction from the Bainbridge Island flagging operation. Substantial evidence supports the Board's findings of fact 2 and 3.

Potelco also argues that the Board erred when it concluded that Potelco's worksite needed to be within 300 feet of the neighboring worksite to be covered by that worksite's signs. But this mischaracterizes the Board's decision; the Board ruled that Potelco's first sign must be placed 100 feet from its worksite, the second sign 200 feet, and the third sign 300 feet from its worksite. The Board concluded that, even accepting Potelco's argument that WAC 296-155-305 would have allowed Potelco to take advantage of the signs for the neighboring worksite,[10] the facts demonstrated that the neighboring worksite was not within 300 feet of Potelco's worksite. Thus, Potelco could not rely on the signs posted by the neighboring worksite.

We hold that the plain language of WAC 296-155-305(8)(a) required Potelco to place three warning signs in each direction from its worksite, rather than relying on other worksites whose schedule or compliance with regulations it did not control. And because the Department's interpretation of its own regulation "reflects a plausible construction of the language and is not

---

[10] The Department asserts that the MUTCD does not include any language suggesting that the recommended distance between a flagger and an advanced warning sign may be reduced to zero, and thus Potelco's reliance on MUTCD § 6C.04 does not support Potelco's argument. The Department also argues that MUTCD section 6F.31 requires Potelco to provide advanced warning of a flagger with the following language, "The Flagger . . . symbol sign . . . should be used in advance of any point where a flagger is stationed to control road users." Br. of Resp't at 18 n.6.

contrary to legislative intent," we give deference to it. *Laser Underground & Earthworks, Inc.* v. *Dep't of Labor & Industr.*, 132 Wn. App. 274, 278, 153 P.3d 197 (2006) (citing *Cobra Roofing Serv., Inc. v. Dep't of Labor & Industr.*, 122 Wn. App. 402, 409, 97 P.3d 17 (2004)). We are not persuaded by Potelco's argument that the MUTCD's discouragement of excessive warning signage applies here; Potelco's interpretation would require us to disregard the plain language of WISHA's regulations. We hold that the Board's findings of fact 2 and 3, that Potelco failed to place three advance warning signs at its Bainbridge Island worksite, support its conclusions of law 2 and 7 that Potelco violated WAC 296-155-305(8)(a).

## III. BREMERTON WORKSITE

Potelco challenges the Board's findings of fact 12 and 13, and the Board's conclusions of law 4 and 8 in affirming the Bremerton citation. Potelco argues that the Board erred in affirming the citation because the inspector's opinion that the sign spacing was not "appropriate" was not substantial evidence to support the Board's conclusion that Potelco violated WAC 296-155-305(8)(c) by (1) failing to provide 100 feet of space between advance warning signs and (2) failing to require flaggers to stand on the shoulder adjacent to the road or to stand in the closed lane before stopping road users. Br. of Appellant at 16. We conclude that substantial evidence supports the

No. 46256-7-II

Board's findings as to the Bremerton worksite, that Potelco did not challenge finding of fact 18,[11] and that therefore the Board properly concluded that Potelco failed to adequately space its advanced warning signs.

Although Potelco argues that it complied with the plain language of WAC 296-155-305(8)(c) when its flaggers set up a three sign advance warning sequence at its Bremerton worksite, the Department responds that Potelco's flagger was positioned immediately behind one of the advanced warning signs, thus violating the requirement in WAC 296-155-305(8)(c) that the sign must provide drivers with advance notice of an upcoming flagger. Although Potelco concedes that one of its flaggers was "positioned . . . within a few feet of [an advanced warning] sign," Potelco contends that the regulation allows for reduced spacing between flaggers and warning signs to accommodate roadway conditions, and thus there was no basis for the Department's citation. Br. of Appellant at 12.

When an employer uses flaggers in a public work area, the employer must comply with WAC 296-155-305. WAC 296-45-52530(1)(b); *Potelco, Inc. v. Dep't of Labor & Indus.*, 166 Wn. App. 647, 654, 272 P.3d 262 (2012). WAC 296-155-305(8)(c) sets forth the required spacing for advanced warning signs. For urban streets with a speed limit of 25 miles per hour or less, there

---

[11] Finding of fact 18 provides,

> [O]n December 21, 2011, in Bremerton, Washington, Potelco and Labor Ready employees . . . were working near 645 4th Street. The Potelco workers were pulling new wire, underground, from vault to vault. Labor Ready employees were flagging traffic at the worksite. A flagger stood in the roadway next to the "Flagger Ahead" sign. As a result, these employees were exposed to a hazard of being struck by passing vehicles at the worksite.

BR at 39.

14

must be at least 100 feet between warning signs. In a table accompanying the regulation, WAC 296-155-305(8)(c) provides that "[t]his spacing may be reduced in urban areas to fit roadway conditions," but does not specify how much the spacing may be reduced.

Here, Potelco does not dispute the Board's finding that one of the worksite flaggers stood "next to" the advanced warning sign. BR at 39. But Potelco argues that the inspector's opinion, that Potelco's spacing between signs and flaggers was not "appropriate," is insufficient to support the Board's conclusion that Potelco violated WAC 296-155-305(8)(c). Br. of Appellant at 16. The Department argues that the requirement that the signs provide advance warning means that there must be more than "zero" spacing between the flagger and the signs. Br. of Resp't at 18. Despite the regulation's lack of specific guidance on how sign spacing may be adjusted, to the extent that WAC 296-155-305(8)(a) is ambiguous about the reduced spacing allowed by road conditions, we defer to the Department's interpretation that the spacing cannot be "zero." *See Potelco*, 166 Wn. App. at 654; *Laser Underground*, 132 Wn. App. at 278.

But Potelco did not challenge finding of fact 18 that the Labor Ready flaggers stood "next to" the advanced warning sign and thus "were exposed to the hazard of being struck by passing vehicles at the worksite," BR at 39; we hold that this finding supports the Board's conclusions of law 4 and 8 that Potelco violated WISHA. And because Potelco failed to present evidence that the Department's construction is not plausible or contrary to legislative intent, and because we give

deference to the Department's interpretation, we affirm the Board's conclusions of law 4 and 8 that Potelco violated WAC 296-155-305(8)(c).[12]

IV. UNCONSTITUTIONALLY VAGUE

Potelco argues that the lack of specificity in WAC 296-155-305(8)(c) regarding the required distance between flagger signs renders the regulation unconstitutionally vague, and thus the trial court erred in affirming its Bremerton citation. The Department responds that WAC 296-155-305(8)(c) is not unconstitutionally vague in Potelco's situation because, although the regulation allows employers to reduce the distance between the three advance warning signs and the flagger when necessary to address road conditions, the regulations do not permit flaggers to stand directly next to the warning signs. We agree with the Department's interpretation.

Generally, we presume statutes are constitutional. *Heesan Corp. v. City of Lakewood*, 118 Wn. App. 341, 352, 75 P.3d 1003 (2003). A party who challenges a rule's constitutionality for vagueness bears the burden of proving beyond a reasonable doubt that it is unconstitutionally vague. *Heesan Corp.*, 118 Wn. App. at 352. A statute is void for vagueness if it is framed in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application. *Faghih v. Dep't of Health, Dental Quality Assurance Comm'n*, 148 Wn. App. 836, 847, 202 P.3d 962 (2009) (citing *Haley v. Med. Disciplinary Bd.*, 117 Wn.2d 720, 739, 818 P.2d 1062 (1991)). We evaluate vagueness challenges by inspecting the actual conduct of the

---

[12] Potelco does not challenge violation 1 item 2, the second portion of the Bremerton citation, finding that Potelco violated WAC 296-155-305(9)(b), which prohibits flaggers from working in the roadway with moving traffic. Because Potelco does not argue that this second portion of the citation was improper, Potelco waives this issue on appeal and we affirm the Board's conclusion. RAP 10.3(a)(6).

party challenging the rule and not by examining "'hypothetical situations at the periphery of the [rule's] scope.'" *Am. Legion Post 149 v. Dep't. of Health*, 164 Wn.2d 570, 612, 192 P.3d 306 (2008) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 181-82, 795 P.2d 693 (1990)).

Here the inspector observed that there was no distance between the third warning sign and the flagger that the sign was meant to protect. And the inspector testified that, although it is sometimes appropriate for flaggers to reduce the regulation's 100 foot spacing requirement based on road conditions, here Potelco's spacing was not appropriate because the signs did not provide an *advance* warning of the flagger. Although Potelco assigns error to the Board's findings of fact 12 and 13, Potelco does not argue that the Board lacked substantial evidence to find that the flagger was standing next to the warning sign; rather, Potelco argues that the possibility of ambiguity in interpreting the sign's spacing requirements renders the statute unconstitutional.

But we do not evaluate hypothetical applications of the regulation, nor do we find ambiguity in the regulation. WAC 296-155-305(8)(c) plainly states that the warning sign must be in advance of the flagger, and Potelco does not dispute that it failed to provide any distance between the third warning sign and the flagger. We hold that the regulation has one reasonable interpretation, and we end our inquiry by adopting the Department's interpretation that the regulation's plain meaning prohibited flaggers from standing next to the advance warning signs.

Moreover, the Board's unchallenged finding of fact 18, relating to the Bremerton worksite, states that "Labor Ready employees were flagging traffic at the worksite. A flagger stood in the roadway next to the 'Flagger Ahead' sign. As a result, these employees were exposed to a hazard of being struck by passing vehicles at the worksite." BR at 39. Unchallenged findings of fact are verities on appeal. *Nelson*, 175 Wn. App. at 723.

Because Potelco's sign spacing at the Bremerton worksite was plainly in violation of WAC 296-155-308(8)(c), and because Potelco does not challenge the Board's finding of fact 18, we hold that, as applied to these facts, the regulation is not unconstitutionally vague and substantial evidence supports the Board's conclusion that Potelco violated WAC 296-155-308(8)(c).

### V. EMPLOYER'S LIABILITY FOR FLAGGING OPERATIONS

Potelco also argues that, under the "economic realities" test, it cannot be held liable for violations committed by Labor Ready's flaggers. Br. of Appellant at 22. The Department responds that Potelco is not excused from complying with safety requirements on the grounds that the flaggers were temporary employees from Labor Ready. We hold that the Board properly determined that, under the economic realities test, Potelco should be cited as an employer responsible for safety of the worksite.

Under WISHA, employers are responsible for the safety and health of their employees. *See* RCW 49.17.060. To advance WISHA's safety objectives, the Department may cite multiple employers for violating work place safety standards. *See Afoa v. Port of Seattle*, 176 Wn.2d 460, 471-72, 296 P.3d 800 (2013). Washington courts look to federal cases interpreting Occupational Safety and Health Act (OSHA) [13] as persuasive authority on how to apply the provisions of WISHA because WISHA parallels OSHA. *See Lee Cook Trucking & Logging v. Dep't. of Labor & Indus.*, 109 Wn. App. 471, 47836 P.3d 558 (2001).

When there is a WISHA violation involving leased or temporary employees, the Board uses the "economic realities" test to determine which employer should be issued the WISHA

---

[13] 29 U.S.C. § 651.

citation.  *See In re Skills Res. Training Ctr.*, No. 95 W253, 1997 WL 593888, at *4 (Wash. Bd. of

Indus. Ins. Appeals August 5, 1997).  The test requires the Board to analyze:

1) who the workers consider their employer;
2) who pays the workers' wages;
3) who has the responsibility to control the workers;
4) whether the alleged employer has the power to control the workers;
5) whether the alleged employer has the power to fire, hire, or modify the employment condition of the workers;
6) whether the workers' ability to increase their income depends on efficiency rather than initiative, judgment, and foresight; and
7) how the workers' wages are established.

*Skills Res. Training Ctr.*, 1997 WL 593888, at *4 (citing *Secretary of Labor v. Union Drilling*,

16 OSHC 1741, at 1742 (1994)).  The key question is whether the employer has the right to control

the worker.  *Skills Res. Training Ctr.*, 1997 WL 593888, at *4.

Potelco argues that the Board improperly concluded that Potelco controlled the flaggers at

the Bainbridge Island and Bremerton worksites based only on the fact that both worksites had the

same Potelco foreman.  We reject Potelco's argument and hold that the factors weigh in favor of

finding that Potelco was the employer at both sites under the "economic realities" test.

As to the first factor of the test, Potelco cites the inspectors' testimony that they understood

the flaggers to be Labor Ready employees.  But Potelco does not cite to evidence regarding who

the workers considered their employer to be at the worksite, and when an inspector asked the

workers "who was in charge of the flaggers . . . both the flaggers and the foreman said that the

foreman at Potelco was [in charge]."  Verbatim Report of Proceedings (VRP) (Jan. 22, 2013 PM)

at 3.  This factor weighs in favor of finding that Potelco was the employer.

As to the second factor, an inspector speculated that Labor Ready paid the workers' wages,

but Potelco did not present evidence to support this.  As to the third and fourth "control" factors,

both factors support a finding that Potelco is an employer here. The Board's unchallenged finding of fact 10 relates to the Bainbridge Island worksite, and states, "Labor Ready provided leased or temporary workers to Potelco for flagging operations at the intersection of Winslow Way and Madison Ave., South. Potelco controlled the worksite at the intersection of Winslow Way and Madison Ave., South." BR at 38. The Board's unchallenged finding of fact 25 relates to the Bremerton worksite, and states, "Labor Ready provided leased or temporary workers to Potelco for flagging operations near 645 4th Street. Potelco controlled the worksite near 645 4th Street." BR at 40.

Because Potelco failed to assign error, the finding that Potelco controlled the worksites is a verity on appeal. Potelco argues that, Hensley, the worksite supervisor at both worksites, testified that he did not consider himself responsible for directing the Labor Ready flaggers, and thus Potelco did not control the Labor Ready flaggers.

But, in his testimony, Hensley agreed that he was in control of the jobsite and that there were no other contractors or employers responsible for the duties that he was there to perform. When asked if "Potelco ha[s] to ensure that the road is properly flagged," Hensley replied "Yeah. When we need flagging, we call one of the companies and have them come flag the road for us." VRP (Jan. 22, 2013 PM) at 62. He also testified that, if he witnessed that a flagger from Labor Ready was positioned out of compliance, he would have the flagger replaced. And although he testified that Labor Ready flaggers have a separate supervisor at Labor Ready, in his "12 or 13 years" working for Potelco, during which he had been "in control of . . . thousands" of worksites, he had seen the Labor Ready supervisor present at a worksite only twice. VRP (Jan. 22, 2013 PM) at 64-65. When asked whose responsibility he thought it was to make sure

20

there was adequate signage at the worksite, Hensley replied, "Everybody's. Everybody that's working there." VRP (Jan. 22, 2013 PM) at 66. Factors three and four weigh in favor of finding that Potelco was an employer.

Factor five weighs in favor of Potelco because Potelco's supervisor at both worksites could not directly hire or fire the flaggers; rather, he could only replace the flaggers by contacting or complaining to Labor Ready, which achieved effectively the same result. Potelco does not raise an argument, nor is there evidence in the record for us to determine whether factors six or seven weigh in Potelco's favor.

Accordingly, we hold that, under the "economic realities" test, substantial evidence in the record supports the Board's findings that Potelco, as an employer, controlled the workers at both worksites. And Potelco conceded that two employers may share responsibility for the same employees. The Department may cite multiple employers for violating workplace safety standards. *See Afoa*, 176 Wn.2d at 471-72. Therefore, we hold that the facts support the Board's legal conclusion that, for both the Bremerton and Bainbridge Island citations, Potelco had control of the worksite in a joint employer worksite.

## VI. STRICT LIABILITY

Potelco also argues that the Board erred in affirming the citations because its ruling would "effectively hold Potelco strictly liable for the conduct of non-employees." Br. of Appellant at 26. Potelco argues that the Board's finding that Potelco had "constructive knowledge" of a violation was insufficient to rule that Potelco violated a WISHA regulation. Br. of Appellant at 27. Given the legislature's expansive definitions of "employer" and "employee," holding Potelco liable as a joint employer on this record supports the Legislature's directive to establish "safe and healthful

21

working conditions." RCW 49.17.010, .020. The Department further argues that Potelco does not face strict liability because "the Department must prove all the elements in a WISHA violation as to each putative employer in a WISHA case." Br. of Resp't at 35 (citing *Afoa*, 176 Wn.2d at 471-72; *J.E. Dunn NW.*, 139 Wn. App. at 44-45). We agree with the Department.

To establish a WISHA safety violation, the Department must prove that

(1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.

*Frank Coluccio Const. Co., Inc. v. Dep't of Labor & Indus.*, 181 Wn. App. 25, 36-37, 329 P.3d 91 (2014) (quoting *Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.*, 119 Wn. App. 906, 914, 83 P.3d 1012 (2003)). Thus, the "Department must also prove an element of 'knowledge' on the part of the employer" before holding them liable. *In re Longview Fibre Co.*, No. 02 W0321, 2003 WL 23269365, at *1 (Wash. Bd. of Indus. Ins. Appeals Nov 5, 2003). The Department may prove either actual or constructive knowledge. *Longview Fibre*, 2003 WL 23269365 at *2. The Department met its burden of proof and we reject Potelco's argument.

CONCLUSION

We hold that (1) the Board's unchallenged findings of fact 10 and 18 provide that Potelco's contractors plainly violated WAC 296-155-305 and (2) substantial evidence supports the Board's challenged findings of fact and they support the Board's conclusions of law that Potelco violated WAC 296-155-305(9)(b) at its Bremerton worksite and violated WAC 296-155-305(8)(a) at both Bremerton and Bainbridge Island worksites. We also hold that WAC 296-155-305(8)(c) is not unconstitutionally vague when applied to Potelco's conduct at the Bremerton and Bainbridge

No. 46256-7-II

Island worksites because Potelco was an employer in control of the flaggers at both worksites. We affirm the Board's decision and order.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

JOHANSON, C.J.

BJORGEN, J.

23