IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>LABORWORKS INDUSTRIAL STAFFING SPECIALISTS, INC.,<br><br>Appellant. | No. 79717-4-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — Laborworks Industrial Staffing Specialists, Inc., assigned temporary workers to Strategic Materials, which operated a recycling plant. The Department of Labor and Industries cited Laborworks for violations of the Washington Industrial Safety and Health Act (WISHA) at the plant. Laborworks appealed to an industrial appeals judge and then to the Board of Industrial Insurance Appeals, arguing that, as a staffing company, with respect to the violations, it was not an employer subject to WISHA. The Board agreed and vacated the citation. The Department then appealed to the superior court, which reversed the Board's decision. Laborworks appeals. We conclude that, under the economic realities test, Laborworks did not constitute an employer for purposes of the citation and reverse the superior court's decision.

Citations and pin cites are based on the Westlaw online version of the cited material.

## I. BACKGROUND

Laborworks, a staffing company, assigns temporary workers to clients in the light industrial sector.

In June 2014, Laborworks signed a General Staffing Agreement to assign temporary workers to Strategic Materials, which operates a facility that recycles and sorts waste including glass and used hypodermic needles. In the Agreement, Strategic Materials agreed to supervise the workers and to provide a safe job site:

CLIENT's Duties and Responsibilities

2. CLIENT will

a. Properly supervise Assigned Employees performing its work and be responsible for its business operations, products, services, and intellectual property;

b. Properly supervise, control, and safeguard its premises, processes, or systems, and not permit Assigned Employees to operate any vehicle or mobile equipment, or entrust them with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables without STAFFING FIRM's express prior written approval or as strictly required by the job description provided to STAFFING FIRM;

c. Provide Assigned Employees with a safe work site, comply with all governmental laws as they may apply, including but not limited to the Occupational Safety and Health Act of 1970 (OSHA), United States Longshoremen's and Harborworker's Compensation Act, Jones Act, Equal Opportunity Act (EEO), and Immigration laws, and provide appropriate information, training, and safety equipment with respect to any hazardous substances or conditions to which they may be exposed at the work site;

d. Not change Assigned Employees' job duties without STAFFING FIRM's express prior written approval.

Laborworks then conducted a safety walk through at the Strategic Materials job site and completed a Job Site Safety Evaluation Report. In the Report, Laborworks verified that Strategic Materials had a written safety program and hazard communication program, and would provide safety gear to the temporary workers. Strategic Materials also agreed to allow Laborworks to conduct site investigations of injuries and accidents. Laborworks provided its temporary workers assigned to the site with the Department's online blood-borne pathogens training and offered Hepatitis B vaccinations to some of the workers.

Laborworks paid the temporary workers daily based on the number of hours worked. Strategic Materials kept track of the hours worked and reported the hours to Laborworks. Strategic Materials set the base rate of pay, which Laborworks then used to determine the amount for workers' compensation premiums, unemployment compensation premiums, and commission payments. Strategic Materials also directed the temporary workers' activities and could terminate temporary workers from the job site. Laborworks could terminate the workers' employment from its staffing agency.

Laborworks learned about a February 2016 incident where a temporary worker "was poked in some way" at Strategic Materials. Another temporary worker suffered an injury in a "needle-stick incident" in July 2016.

In 2017, the Department cited Laborworks with three serious and two general violations of the Washington Administrative Code (WAC) section 296-823, which concerns occupational exposure to blood-borne pathogens. The

Department later issued a Corrective Notice of Redetermination (CNR) affirming the violations issued in the citation.

Laborworks appealed the CNR to an industrial appeals judge. Laborworks argued that it was not an employer for purposes of the WISHA and that "the Department failed to establish that any employees were exposed to blood or any other, potentially-infectious material." The industrial appeals judge affirmed the CNR.

Laborworks appealed to the Board. The Board issued a Decision and Order vacating the CNR. The Board made two findings of fact on the issue of whether Laborworks was an employer in relation to the citation:

4. LaborWorks, a temporary staffing company, contracted with Strategic to provider workers to work at a Strategic recycling facility. LaborWorks paid workers' compensation, unemployment insurance, and wages for workers it provided to Strategic, but Strategic determined the base wage rate. LaborWorks also provided initial training to workers it sent to Strategic but performed no random site checks at the premises.

5. Both LaborWorks and Strategic maintained the right to terminate workers. However, Strategic exerted daily control over the employees by assigning work and providing supervision over the LaborWorks workers.

Based on these findings, the Board concluded (2-1) that Laborworks was not an "employer" for WISHA purposes.[1]

The Department then appealed the Decision and Order to the superior court. Though the superior court determined that substantial evidence supported

---

[1] One board member dissented from the Board's decision, concluding that— under the economic realities test—Laborworks was an employer in connection with the violations. The dissenting member did not apply the knowledge standard from the Department's Dual Employer Directive, which this analysis addresses briefly below.

No. 79717-4-I/5

the Board's findings, it concluded that Laborworks was an employer and reversed the Board's decision.

Laborworks appeals.

## II. ANALYSIS

In WISHA appeals, this court reviews the Board's decision based on the record before the agency. Erection Co. v. Dep't of Labor & Indus., 160 Wn. App. 194, 201, 248 P.3d 1085 (2011). We review the Board's findings of fact to determine whether substantial evidence supports them. Potelco, Inc. v. Dep't of Labor & Indus., 191 Wn. App. 9, 21, 361 P.3d 767 (2015). Substantial evidence is what "would persuade a fair-minded person of the truth or correctness of the matter." Erection Co., 160 Wn. App. at 202. If substantial evidence supports the factual findings, then the findings are conclusive and the panel next determines whether the findings support the conclusions of law. Erection Co., 160 Wn. App. at 202. We view the evidence and its reasonable inferences in the light most favorable to the prevailing party in the highest forum that exercised fact finding authority. See id. at 202. Here, we do so in the light most favorable to Laborworks, which prevailed before the Board.

"The legislature enacted [WISHA] 'to assure, insofar as may reasonably be possible, safe and healthful working conditions for every [worker] in the state of Washington.'" Erection Co., 160 Wn. App. at 201 (quoting RCW 49.17.010). We liberally interpret WISHA statutes and regulations to achieve their purpose of providing safe working conditions for every Washington worker. Erection Co., 160 Wn. App. at 202.

5

WISHA renders employers responsible for the health and safety of their employees. Potelco, 191 Wn. App. at 30. "Any entity that engages in any business and employs one or more employees is an employer for WISHA purposes." Martinez Melgoza & Assocs. Inc. v. Dep't of Labor & Indus., 125 Wn. App. 843, 848, 106 P.3d 776 (2005) (citing RCW 49.17.020(4)). To promote WISHA's safety objectives, if two or more employers share responsibility for the same employee, "the Department may cite multiple employers for violating workplace safety standards." Potelco, 191 Wn. App. at 30.

The Department argues that Laborworks is a liable employer under the economic realities test.[2] Laborworks responds that it is not so liable because it lacked control over the Strategic Materials job site. We conclude that, under the economic realities test, Laborworks is not an employer with respect to the violations.

"When there is a WISHA violation involving leased or temporary employees, the Board uses the 'economic realities test' to determine which employer should be issued the WISHA citation." Potelco, 191 Wn. App. at 30-31. The test involves seven factors:

    1)  who the workers consider their employer;
    2)  who pays the workers' wages;
    3)  who has the responsibility to control the workers;
    4)  whether the alleged employer has the power to control the workers;

---

[2] The Department also argues that we should apply a standard from its Dual Employers Directive, which would make Laborworks liable as an employer for the WISHA citations if they "knew or clearly should have known" of the violations. We recently rejected this argument in Department of Labor and Industries v. Tradesmen International, LLC, No. 79634-8 (Wash. Ct. App. Aug. 17, 2020).

5) whether the alleged employer has the power to fire, hire, or modify the employment condition of the workers;

6) whether the workers' ability to increase their income depends on efficiency rather than initiative, judgment, and foresight; and

7) how the workers' wages are established.

Potelco, Inc., 191 Wn. App. at 31.  Under this test, "[t]he key question is whether the employer has the right to control the worker."  Potelco, Inc., 191 Wn. App. at 31.

The record lacks evidence about the first and sixth factors.  We address the other factors in turn and, in doing so, we view the evidence and reasonable inferences therefrom in the light most favorable to Laborworks.

*Payment of Wages*

In the Agreement, Laborworks agreed to "[p]ay Assigned Employees' wages and provide them with the benefits that [Laborworks] offers to them."  And Laborworks paid the workers their wages.  Thus, this factor supports citing Laborworks as an employer in connection with the violations.

*Responsibility to Control the Workers*

The Department argues that Laborworks had the responsibility to control the temporary workers and that this "is demonstrated by [Laborworks] hiring, assigning to sites, paying the workers, covering workers' compensation and unemployment, training, inspecting sites, directing compliance with safety rules, monitoring the provision of safety equipment, and by the company's ability to discipline, terminate, or remove it [sic] workers from unsafe situations."  The Department says, "[I]n almost *all* temporary leasing situations[] both employers

7

control[] the workers." (Emphasis added.) But its argument fails to apply properly the economic realities test.

"[I]n leased employment situations, whether the lessor or the lessee should be cited for WISHA violations depends on the economic realities of who controls the workplace. Both employers cannot be cited unless they both have *substantial control over the workers and the work environment* involved in the violations." In re Skills Res. Training Ctr., No. 95 W253 at 3 (Wash. Bd. of Indus. Ins. App. Aug. 5, 1997) (emphasis added). Under the Agreement, Strategic Materials had the responsibility to "[p]roperly supervise Assigned Employees performing its work" and to "[p]roperly supervise, safeguard, and control its premises." Strategic Materials also took on the responsibility to "[p]rovide Assigned Employees with a safe work site." Thus, under the contract, Strategic Materials bore the responsibility of controlling the workers and the job site. This factor weighs against citing Laborworks as an employer.

*Power to Control the Workers*

Laborworks did not have the power to control the temporary workers in most regards. Though Laborworks could assign temporary employees to Strategic Materials, its control over the temporary employees basically ended afterward. After assignment, Strategic Materials gave the daily job assignments, determined what processes the temporary workers would work on, and ensured that appropriate controls were being used. Following an initial safety inspection to determine what programs were in place and what personal protective equipment was required or provided, Laborworks did not conduct other safety

8

inspections. Laborworks also did not send any supervisors to the job site to accompany its temporary workers.

"[T]he [Occupational Safety and Health Commission (OSHC)] has held companies that pay employees (including employee lease-back situations) are not employers unless they control the jobsite and the employees' activities." Skills Res. Training Ctr., slip op. at 9. Though Laborworks had some general control over the workers through its power to assign the workers and the terms laid out in the Agreement,[3] it lacked the power to control the job site and the temporary workers' activities there. This factor also weighs against citing Laborworks as an employer.

*Power to Fire, Hire, or Modify the Employment Condition of the Workers*

Laborworks had the power to hire temporary workers and to fire them from their staffing company. Strategic Materials had the authority to fire a temporary worker from its work assignment. While the Agreement required Laborworks' approval before Strategic Materials permitted temporary workers to perform certain tasks or made changes to their job duties, Laborworks lacked the authority to change their job conditions while on the assignment. Viewing the evidence and reasonable inferences therefore in the light most favorable to Laborworks, this factor weighs against citing Laborworks as an employer.

---

[3] Sections 2b and 2d of the Agreement provided that Strategic Materials could not assign certain tasks to temporary workers or change their job duties without Laborworks' permission.

*Establishment of the Workers' Wages*

Laborworks assigned employees to Strategic Materials daily, and so it issued paychecks to the temporary workers at the end of each day. Strategic Materials would communicate to Laborworks how many hours each temporary worker worked. Strategic Materials set the base rate of pay, which Laborworks then used to determine the amount for workers' compensation premiums, the unemployment compensation premiums, and their commission payment. Because Laborworks calculated the amount of the temporary workers' wages based on how many hours Strategic Materials reported and the base wage rate Strategic Materials set, this factor weighs against citing Laborworks as an employer.

Only one factor—who pays the workers' wages—supports holding Laborworks liable as an employer for the citations. Four factors, including the two relating the control, weigh to the contrary. Thus, the economic realities test dictates that Laborworks is not an employer with respect to the violations.

We determine that substantial evidence supports the Board's findings that Strategic Materials exerted daily control over the temporary workers by assigning work and providing supervision. Substantial evidence also supports the Board's findings that Laborworks paid the workers based on a base wage rate set by Strategic Materials, Laborworks provided initial training to temporary workers but did not perform random site checks, and both parties maintained their respective right to terminate workers' employment. These findings, and application of the

economic realities test, support the conclusion that Laborworks was not an

employer under WISHA with respect to the violations at issue.

We reverse.

_____Chun, J._____

WE CONCUR:

_____          _____