IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CHINOOK ROOFING & GUTTERS, | ) | No. 81133-9-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF LABOR & INDUSTRIES, | ) | |
| | ) | |
| Respondent. | ) | |

ANDRUS, A.C.J. —Chinook Roofing & Gutters (Chinook) appeals a decision of the Board of Industrial Insurance Appeals (Board) affirming the Department of Labor & Industries (Department) citation for violating fall protection regulations. Because substantial evidence supports the Board's findings, we affirm.

FACTS

Chinook installs steep slope and commercial low slope roofing. In October 2017, Department compliance safety and health officer Michael Crews observed four Chinook employees–Manuel Prado, Geraldo Villasenor, Pedro Gonzalez, and Cristian Tovar–working on a steep slope[1] roofing project in Kenmore, Washington.

---

[1] A steep pitched roof has a slope greater than 4 in 12. Former WAC 296-155-24609(7)(a). The roof at issue in this case had a pitch of 5 in 12.

Citations and pin cites are based on the Westlaw online version of the cited material.

Despite being approximately 28 feet off the ground, three of the four men worked for an extended period of time without attaching their fall-protection lifelines to available roof anchors. Crews saw one worker lean over the roof's edge without securing his lifeline.

The Department cited Chinook for violating former WAC 296-155-24609(1) (2016), repealed by Wash. St. Reg. 20-12-091 (effective 10/01/20)[2] based on the workers' failure to connect their lifelines to available anchor points. It cited Chinook for violating former WAC 296-155-24611(2)[3] based on its failure to have a fall protection work plan at the worksite.

Chinook appealed these citations to the Board. At the administrative hearing, Chinook claimed it had implemented an in-depth training program on proper fall protection procedures, had inspected the site earlier that day to ensure its workers were using their fall protection equipment properly, and had no reason to know these employees were violating safety regulations. It also raised the affirmative defense that the violation was the result of unpreventable employee misconduct.

The Board found that while Chinook had an adequate safety program, including safety rules and training, it failed to effectively enforce this program. It affirmed the citation for the serious violation of former WAC 296-155-24609(1) and corresponding penalty of $1,800. The Board vacated the citation for the violation of

---

[2] The fall protection standards contained in former Chapter 296-155 WAC were amended and consolidated into Chapter 296-880 WAC. See Wash. St. Reg. 20-12-091. Former WAC 296-155-24609 is now set out in WAC 295-880-20005.
[3] Former WAC 296-155-24611 is now set out in WAC 295-880-10020.

former WAC 296-155-24611(2), concluding the Department had not proved this violation occurred. Chinook appeals.

ANALYSIS

Chinook challenges the Board's finding that it violated former WAC 296-155-24609(1), arguing substantial evidence does not support the finding that Chinook had knowledge of its workers' safety violations. In the alternative, Chinook argues the Board erred in rejecting its affirmative defense of unpreventable employee misconduct, arguing substantial evidence does not support the Board's finding that Chinook's safety plan was ineffective in practice.

In a Washington Industrial Safety and Health Act of 1973[4] (WISHA) appeal, this court reviews the Board's decision directly, based on the record before the agency. J.E. Dunn Nw, Inc., v. Dep't of Labor & Indus., 139 Wn. App. 35, 42, 156 P.3d 250 (2007) (citing Legacy Roofing, Inc. v. Dep't of Labor & Indus., 129 Wn. App. 356, 363, 119 P.3d 366 (2005)). The Board's findings are conclusive if they are supported by substantial evidence in light of the record as a whole. J.E. Dunn Nw, 139 Wn. App. at 43; RCW 34.05.570(3)(e). Substantial evidence is evidence sufficient "to persuade a fair-minded person." 139 Wn. App. at 43. This court reviews the Board's conclusions of law to determine whether they are supported by its findings of fact. Id. at 42. The reviewing court does not reweigh the evidence. Davis v. Dep't of Labor & Indus., 94 Wn. 2d 119, 124, 615 P.2d 1279 (1980).

---

[4] Chapter 49.17 RCW.

- 3 -

A. <u>Constructive Knowledge of the Violation</u>

Chinook first argues that the Board's finding that Chinook had knowledge of its employees' safety violations is not supported by substantial evidence. We reject this argument.

Employers must "ensure that the appropriate fall protection system is provided, installed, and implemented . . . when employees are exposed to fall hazards of 4 feet or more. . ." former WAC 296-155-24609(1). The Department bears the burden of proving that a violation occurred. <u>Mowat Constr. Co. v. Dep't of Labor & Indus.</u>, 148 Wn. App. 920, 924, 201 P.3d 407 (2009). To establish a serious violation of a WISHA safety regulation, the Department must prove:

> (1) the cited standard applies; (2) the requirements of the standard were not met; (3) employees were exposed to, or had access to, the violative condition; (4) the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition; and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.

<u>Frank Coluccio Constr. Co. v. Dep't of Labor & Indus.</u>, 181 Wn. App. 25, 36-37, 329 P.3d 91 (2014) (quoting <u>Wash. Cedar & Supply Co. v. Dep't of Labor & Indus.</u> 119 Wn. App. 906, 914, 83 P.3d 1012 (2003)). Chinook challenges only the evidence supporting the fourth element of knowledge.

Under RCW 49.17.180(6), the Department may prove employer knowledge with evidence of either actual or constructive knowledge. <u>Potelco, Inc. v. Dep't of Labor & Indus.</u>, 191 Wn. App. 9, 34, 361 P.3d 767 (2015). Constructive knowledge exists where, in the exercise of reasonable diligence, an employer could have known of the violation. RCW 49.17.180(6). "'Reasonable diligence' includes the obligation of an employer to inspect the work site, anticipate hazards that employees

- 4 -

may be exposed to, and take measures to prevent the occurrence of a violative condition." Bayley Constr. v. Dep't of Labor & Indus., 10 Wn. App. 2d 768, 783, 450 P.3d 647 (2019), review denied, 195 Wn.2d 1004, 458 P.3d 788 (2020) (citing Erection Co., v. Dep't of Labor & Indus., 160 Wn. App. 194, 248 P.3d 1085 (2011)). Reasonable diligence includes a duty to adequately supervise employees. Thomas G. Gallagher, Inc. v. Occupational Safety & Health Review Comm'n, 877 F.3d 1, 9 (1st Cir. 2017); N & N Contractors, Inc. v. Occupational Safety & Health Review Comm'n, 255 F.3d 122, 127 (4th Cir. 2001).

An employer has constructive knowledge of a hazardous condition if it is readily observable or in a conspicuous location in the area of the employer's crews. BD Roofing, Inc. v. Dep't of Labor & Indus., 139 Wn. App. 98, 109-10, 161 P.3d 387 (2007). The Department may show constructive knowledge with evidence that a violation was in plain view. Potelco, Inc. v. Dep't of Labor & Indus., 7 Wn. App. 2d 236, 244, 433 P.3d 513 (2018).

The Board found Chinook had constructive knowledge of its employees' violations because their actions were in plain view. Substantial evidence supports this finding. Crews testified that he went to the site after the Department received an anonymous tip regarding unsafe work behavior. When he arrived and located the Chinook workers, Crews positioned himself so that he could observe them on the roof. Using his binoculars, Crews observed that three of the four employees on the roof were not wearing proper fall protection safety equipment. From his vantage point, Crews took pictures and documented the Chinook workers' noncompliance with fall protection regulations. The pictures, admitted as exhibits at the hearing,

demonstrated that the employees did not have lifelines affixed to their harnesses while they worked. The pictures further demonstrated that one employee was unsecured while leaning over the edge of the roof. Their violations were readily apparent to Crews.

After watching the workers for an hour, Crews contacted the crew. He spoke with Tovar, who spoke English and translated his questions to the other workers. Tovar told him that Prado was the lead employee for the crew. But Chinook representatives testified that Prado was neither a supervisor nor a crew leader.

Although Chinook's production manager, Augustin Tovar, testified he conducted a site safety inspection that morning, during which time all of the workers were wearing fall protection and were properly tied off to safety anchors, he admitted that when he left the job site, there was no on-site supervisor of the crew. This evidence supports the Board's findings that Chinook could have observed the workers' failure to use fall protection equipment had it exercised reasonable diligence in supervising these employees.

Chinook argues the Department did not present evidence that Chinook failed to exercise due diligence in supervising its crew. It points to the efforts it took to train the employees, to inspect the work area, and to prevent fall protection violations from occurring. These efforts, Chinook argues, make it "clear" that the violations "were unforeseeable, contrary to the extensive training that [the employees] received, and contradictory to the regular observations made by [supervisors]." The standard on appeal, however, is whether Chinook "<u>knew or should have known</u> of the violative condition—not whether the behavior that led to

the violation was <u>foreseeable</u>." <u>Potelco, Inc. v. Dep't of Labor & Indus.</u>, 194 Wn. App. 428, 440, 377 P.3d 251 (2016) (emphasis in original).

Here, there is sufficient evidence to support the conclusion that, had Chinook exercised reasonable diligence through adequate supervision, it would have discovered the violations. Chinook witnesses testified that supervisors were often absent from its job sites and employees are expected to work on an honor system where they call and report other employees' unsafe or violative behaviors. But the workers in this case had a history of fall protection safety violations. Chinook disciplined Prado in both March and May of 2017 for safety violations. In fact, he was cited for exactly the same behavior—leaning over the edge of a roof without adequate fall protection—as the Department observed on October 5. Chinook cited Villasenor in July 2017 for not being tied off while working on a three-story-high roof and cited Tovar in June 2017 for not properly using his personal protective equipment. This evidence is sufficient for the Board to have found that Chinook's supervision of its employees did not rise to the level of reasonable diligence.

Chinook contends that the Board's finding effectively requires it to "maintain constant vigilance over the workers and the worksite to avoid WISHA liability," which, it argues, amounts to strict liability. We disagree. In <u>Potelco </u>191 Wn. App., this court rejected a similar argument. In that case, an electrical company hired third-party flaggers to help control traffic at its worksites. After the Department cited Potelco for flagging violations, it argued it was being held strictly liable for the conduct of non-employees. <u>Id.</u> at 33. The court concluded the citations were not based on strict liability but were instead based on evidence that Potelco knew or

could have known of the flaggers' safety violations. Id. Requiring the Department to prove either actual or constructive knowledge of the violations eliminated any risk of strict liability.

Here, as in Potelco, the Department was required to prove, and did prove that Chinook had constructive knowledge of its employees' safety violations. Chinook chose not to provide an on-site supervisor for workers known to the company to have violated fall protection requirements on more than one occasion. Although a site supervisor traveled to the work site to conduct periodic inspections, when the supervisor left the site, he left no one in charge of ensuring workplace safety compliance. The employees' failure to comply with the fall protection requirements was open and obvious to any observer and would have been seen by a Chinook supervisor. A reasonable trier of fact could find that Chinook's supervision was not reasonably diligent under these circumstances.

Because there is sufficient evidence demonstrating that, had it exercised reasonable diligence, Chinook could have known of the safety violations, we affirm the Board's finding that it committed a serious violation of former WAC 296-155-24609(1).

B. Unpreventable Employee Misconduct

Chinook next argues the Board erred in finding that Chinook failed to establish the affirmative defense of unpreventable misconduct. We disagree.

The Department may not issue a citation if unpreventable employee misconduct caused the violation. RCW 49.17.120(5)(a). To establish this affirmative defense, an employer must demonstrate the existence of:

        (i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;

        (ii) Adequate communication of these rules to employees;

        (iii) Steps to discover and correct violations of its safety rules; and

        (iv) Effective enforcement of its safety program as written in practice and not just in theory.

RCW 49.17.120(5)(a). An employer asserting the defense must prove each element. Wash. Cedar & Supply Co. v. Dep't of Labor & Indus., 119 Wn. App. 906, 911, 83 P.3d 1012 (2003).

To show that a safety program is effective in practice, the employer must present evidence that the employees' misconduct was an isolated occurrence and unforeseeable. Id. at 913. Prior citations for similar conduct may preclude the defense of employee misconduct because "those prior violations provide notice to the employer of the problem, thereby making repeat occurrences foreseeable . . . [T]he existence of prior violations does not absolutely bar [the defense]; it merely is evidence that the employee conduct was foreseeable and preventable." Id. An employer's steps to discover and correct safety violations are inadequate when unannounced inspections are infrequent and workers caught violating the rules are not consistently disciplined or penalized, because such steps are insufficient to deter future violations. Legacy Roofing, 129 Wn. App. at 365.

The Board found Chinook had developed a good safety plan, satisfying RCW 49.17.120(5)(a)(i). However, the Board also found that this safety plan "was not at all effective in practice" because the Chinook employees "did not fully buy into [it]." It thus concluded Chinook failed to establish effective procedures for enforcement of its program in practice as required by RCW 49.17.120(5)(a)(iv).

There is substantial evidence to support the Board's findings. First, Chinook's documentation demonstrated that its employees' misconduct was far from an "isolated occurrence." In the months prior to the citation, Chinook documented four safety violations involving the same employees. Additionally, Chinook's job site safety inspection records revealed further employee safety violations, including Gonzalez's failure to wear safety glasses, Prado's failure to correctly tie a ladder to the roof, and Villasenor's failure to tie off or to wear safety glass.

The Board reasonably found that Chinook's documentation shows it failed to effectively enforce its safety program as written and that Chinook's workers were not consistently disciplined or penalized when they were found to be violating safety rules. For example, on March 20, 2017, Prado was observed "kneeling on the roof edge of the building" without adequate fall protection and he was suspended for two days. The safety violation form indicates that further violations would result in termination. But less than two months later, on May 15, 2017, Prado was caught violating fall protection regulations by improperly tying off his lifeline. Despite Chinook's warnings that Prado would be terminated, he received only a written warning for this violation.

There is also substantial evidence to support the finding that Chinook failed to take adequate steps to discover employee safety violations. While Augustin Tovar testified he visited the worksites "almost every day", he also testified that supervisors are often not present at job sites. He confirmed that no one else is in charge of safety and he relies on other employees to report unsafe behaviors of

coworkers. Furthermore, the job site safety inspection records establish only sporadic—rather than daily—inspections. The records Chinook produced cover a 3-month period, from July 3, 2017 to October 5, 2017, but show only 17 safety inspections during that timeframe. These records evidenced gaps in Chinook's safety inspections, including a 17-day period between September 7 and September 25 in which no inspections appear to have occurred.

Chinook contends the Board "completely ignored" the numerous measures Chinook took to prevent any safety infractions from occurring, including the preparation of a fall protection work plan, provision of fall protection training, site inspections, and Chinook's post-infraction discipline and safety counseling. To the contrary, the Board acknowledged these measures and found Chinook had developed a good safety plan. But, after the Board weighed all the available evidence, it nevertheless found the plan was ineffective in practice. This court will not reweigh the evidence. Davis, 94 Wn.2d at 124.

We conclude there was substantial evidence supporting the Board's findings that Chinook had constructive knowledge of its workers' noncompliance with fall protection regulations and that Chinook's safety plan was not effective in practice.

We affirm.

Andrus, A.C.J.

WE CONCUR:

- 11 -