IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| DEPARTMENT OF LABOR AND INDUSTRIES OF THE STATE OF WASHINGTON,<br><br>　　　　　　　Appellant,<br><br>　　　v.<br><br>TRADESMEN INTERNATIONAL, LLC,<br><br>　　　　　　　Respondent. | No. 79634-8-I<br><br>DIVISION ONE<br><br>PUBLISHED OPINION |

CHUN, J. —Tradesmen International, LLC, a staffing company, assigned a temporary worker to a Dochnahl Construction job site. One day, without notifying Tradesmen, Dochnahl sent the temporary worker to a different job site, where the Department of Labor and Industries discovered several violations of the Washington Industrial Safety and Health Act (WISHA). The Department cited Tradesmen with two serious violations.

Tradesmen appealed. An industrial appeals judge (IAJ) determined that Tradesmen was not an employer under WISHA for purposes of the citation. The IAJ issued a proposed decision vacating the citation. The Board of Industrial Insurance Appeals affirmed (3-0) the IAJ's proposed decision. The superior court affirmed the Board's decision. The Department appeals, asserting that we should hold Tradesmen liable under the "knew or clearly should have known"

standard from its Dual Employer Directive (Directive).[1] We reject this argument, apply the "economic realities test," and affirm the superior court's conclusion that Tradesmen was not an employer liable for the violations.

## I. BACKGROUND

Tradesmen, a staffing company, assigns temporary workers to other employers. Most of the company's business in Washington takes place in the construction industry.

Tradesmen provides safety training to their workers and provides, or helps their workers acquire, necessary personal protective equipment such as hard hats, safety glasses, and gloves. The company also ensures that job sites where it sends workers are safe by conducting a "walkout." During a walkout, a Tradesmen field representative goes to the job site, checks for obvious safety hazards, and discusses general safety topics with its employees.

Tradesmen entered into a Client Service Agreement (CSA) with Dochnahl. In the CSA, Tradesmen agreed to assign temporary workers as needed and to be responsible for paying and determining the workers' compensation.

Dochnahl agreed to be "solely responsible for directing, supervising and controlling Tradesmen employees as well as their work," to "verify[] the accuracy of the records of actual time worked by Tradesmen employees," and "to provide Tradesmen workers a safe work environment that complies with all applicable Federal [Occupational Safety Hazard Act (OSHA)] and/or equivalent state

---

[1] Wash. Dep't of Labor & Indus., Div. of Occupational Safety & Health (DOSH), Directive 1.15, at 3 (Feb. 15, 2019), https://www.lni.wa.gov/dA/96edf1ea0f/DD115.pdf [https://perma.cc/GA2K-QXNN].

agency standards." Dochnahl also agreed "to provide Tradesmen workers any specific safety training and/or equipment required for their work assignment, exclusive of boots, hard hats and safety glasses, . . . [and to] ensure Tradesmen workers wear all required safety equipment, as well as inspect, maintain and replace this equipment as needed." Dochnahl, at its sole discretion, could terminate a Tradesman worker from its employ. Only Tradesmen, however, could fire a temporary worker from its staffing company.

Under a protocol, if a client wanted to move a temporary worker to a job site Tradesman had not yet inspected, the client was to notify the staffing company. Though the protocol was not in the written agreements with clients, Tradesmen established it through verbal agreement. Tradesmen said it was "rare" for a client not to call it when moving a worker.

In the spring of 2016, Dochnahl needed a temporary worker to perform "[t]ypical labor" and clean up at a construction site on Federal Avenue in Seattle. A Tradesmen field representative conducted a walkout and determined the site "checked out okay." Tradesmen assigned a temporary worker to the site.

One day, Dochnahl sent Tradesmen's temporary worker to a different job site, which was on Palatine Avenue in Seattle. Despite the protocol, Dochnahl moved the temporary worker without notifying Tradesmen. Tradesmen had not conducted a walkout at that site.

The Department inspected the Palatine Avenue site after receiving a tip that it had improper trenching and unsafe scaffolding. The Department discovered multiple WISHA violations and cited Dochnahl. The Department also

3

cited Tradesmen with two serious violations for failing to ensure that (1) fall protection systems were implemented, and (2) a qualified person designed a wooden job-made scaffold.

Tradesmen appealed the citation to an IAJ, who issued a proposed order vacating the citation. The IAJ concluded that Tradesmen was not an employer for purposes of the citation based on findings that Tradesmen did not control the temporary worker or work environment.

The Department then appealed to the Board. The Department asked the Board to apply a standard from the Directive, as opposed to the economic realities test. The Directive, which establishes inspection and enforcement policies for situations involving two or more employers, states that the Department should cite an employer for a violation of which it knew or clearly should have known. Directive, at 5. The Board affirmed 3-0. It rejected the Department's argument under the Directive and concluded that Tradesmen was not liable as an employer for any violations the Department discovered during its inspection of the Palatine Avenue job site. The Board made several findings regarding the control that both Tradesmen and Dochnahl had over the temporary worker and the Palatine Avenue job site:

2. Tradesmen International, LLC, (Tradesmen) leases workers to its clients pursuant to agreements between Tradesmen and the clients. Under the agreements the client is solely responsible to direct and supervise the workers provided by Tradesmen and their work; to provide the worker with safety training specific to the work being done; to provide a safe work environment that complies with all applicable state and Federal health and safety standards; and may terminate the worker for any reason but a discriminatory one.

4

3. Tradesmen inspects each worksite to which it is informed that its workers are dispatched to ensure compliance with applicable safety and health laws, and will direct that corrections to any safety and health problems it discovers be effected. If the client moves the worker to work at a site other than the one Tradesmen has been informed of, protocol requires the client to inform Tradesmen of the move in order to permit Tradesmen to inspect the new site and arrange for correction of any safety and health hazards.

. . .

5. On April 26, 2016, Dochnahl transferred [the temporary worker] to a worksite located at 6521 N. Palatine, Seattle, Washington, without notifying Tradesmen of the change in [the temporary worker]'s worksite. [The temporary worker] did not inform Tradesmen of the change in worksites.

. . .

8. On April 26, 2016, Tradesmen did not control [the temporary worker] or the work he was performing at 6521 N. Palatine, Seattle, Washington.

9. On April 26, 2016, Tradesmen did not control the worksite or the work environment at 6521 N. Palatine, Seattle, Washington.

10. On April 26, 2016, Tradesmen did not know, nor through the applicable diligence could it have known, of the safety and health hazards to which [the temporary worker] was exposed at 6521 N. Palatine, Seattle, Washington.

The Department appealed the Board's decision to the Superior Court, which affirmed the Board's decision. The Department appeals.

## II. ANALYSIS

In WISHA appeals, we review the Board's decision based on the record before the agency. Erection Co. v. Dep't of Labor & Indus., 160 Wn. App. 194, 201, 248 P.3d 1085 (2011). We review the Board's findings of fact to determine whether substantial evidence supports them. Potelco, Inc. v. Dep't of Labor & Indus., 191 Wn. App. 9, 21, 361 P.3d 767 (2015). Substantial evidence is what "would persuade a fair-minded person of the truth or correctness of the matter."

Erection Co., 160 Wn. App. at 202. If substantial evidence supports the factual findings, then the findings are conclusive and we next determine whether the findings support the conclusions of law. Id. at 202. We view the evidence and its reasonable inferences in the light most favorable to the prevailing party in the highest forum that exercised fact-finding authority. See id. at 202. Thus, we must view such evidence and inferences in the light most favorable to Tradesmen, who prevailed before the Board.

"The legislature enacted [WISHA] 'to assure, insofar as may reasonably be possible, safe and healthful working conditions for every [worker] in the state of Washington.'" Id. at 201 (quoting RCW 49.17.010). We liberally interpret WISHA statutes and regulations to achieve their purpose of providing safe working conditions for every Washington worker. Id. at 202.

WISHA renders employers responsible for the health and safety of their employees. Potelco, 191 Wn. App. at 30. "Any entity that engages in any business and employs one or more employees is an employer for WISHA purposes." Martinez Melgoza & Assoc., Inc. v. Dep't of Labor & Indus., 125 Wn. App. 843, 848, 106 P.3d 776 (2005) (citing RCW 49.17.020(4)). To promote WISHA's safety objectives, if two or more employers share responsibility for the same employee "the Department may cite multiple employers for violating workplace safety standards." Potelco, 191 Wn. App. at 30.

A. Dual Employer Directive

The Department argues that the Board erred by declining to apply the Directive and by failing to conclude that Tradesmen is liable for the WISHA

6

violations under the "knew or clearly should have known" standard. Tradesmen responds that the Directive does not apply and, even if it did, substantial evidence supports the Board's finding that Tradesmen neither knew nor clearly should have known of the WISHA violations. We decline to apply the standard from the Directive.

The Department developed internally the Directive to "establish[] inspection and enforcement policies for assessing situations where two or more employers may share liability for safety or health violations that expose employees to workplace hazards." Directive at 1. The Department noted that "[d]ual employer situations have increased over recent years with the growth of temporary services and employee leasing agencies, which provide employees to work at a site under the supervision and control of another employer." Directive at 1. The Directive refers to primary and secondary employers. Directive at 1-5. A primary employer is the "employer of record, who contracts with the employee to perform work in exchange for wages or a salary and issues the employee's pay check, secures workers' compensation insurance for the employee, and usually retains hiring and firing authority." Directive at 1. Here, Tradesmen is the primary employer. Secondary employers, like Dochnahl, are those who control the employee at the job site. Directive at 1.

Under the Directive, the Department will typically decline to cite a primary employer for safety and health violations at the job site so long as they meet certain requirements for providing training and personal protective equipment and do not supervise or control the employees' work activities at the job site.

7

Directive at 2. The Department may cite a primary employer, however, "if they had knowledge or clearly should have had knowledge of the violation." Directive at 5. The Department asserts that a primary employer meets the "clearly should have known" standard if they could have discovered the violation through reasonable diligence.

But the Department did not promulgate the Directive under the rulemaking requirements of the Administrative Procedure Act (APA). In contrast to agency rules, the Directive constitutes a policy statement, which lacks the force of law and is advisory only. See J.E. Dunn Nw., Inc. v. Dep't of Labor & Indus., 139 Wn. App. 35, 51-53, 156 P.3d 250 (2007) (explaining why WISHA Regional Directive 27.00, which was not promulgated under the APA, cannot operate to shift burden of proof on element of WISHA violation). We thus decline to apply the "knew or clearly should have known" standard from the Directive.[2]

---

[2] The Department also asserts that we should defer to OSHA cases applying the "knew or clearly should have known" standard to staffing agencies because WISHA is meant to be as effective as OSHA. But the cases cited by the Department for this proposition, Barbosa Grp., Inc., 2005 CCH OSHD (No. 02-0865, 2007) and Aerotek, 2018 CCH OSHD (No. 16-0618, 2018), do not explicitly apply the "knew or clearly should have known" standard and are distinguishable on their facts, as the staffing agencies provided on-site managers. Tradesmen did not provide any on-site manager at Dochnahl's Federal Avenue or Palatine Avenue job sites and did not otherwise exercise comparable control over the sites.

Furthermore, even if we were to apply the knowledge standard, we would not conclude that Tradesmen is a liable employer for the violations at issue. The record demonstrates that Tradesmen's protocol was for clients, such as Dochnahl, to notify it before moving a temporary worker to a job site that Tradesmen had not yet inspected. Despite this protocol, the record shows that Dochnahl did not inform Tradesmen that it was sending the temporary worker to the Palatine Avenue job site and that Tradesmen did not have the opportunity to inspect the Palatine Avenue job site for safety violations. This constitutes substantial evidence to support the Board's finding that "Tradesmen did not know, nor through the applicable diligence could it have known, of the safety and health hazards to which [the temporary worker] was exposed at 6521 N. Palatine, Seattle, Washington."

B. Economic Realities Test

The Department next claims that the Board erred by concluding that Tradesmen is not a liable employer under the economic realities test. Tradesmen responds that the Board correctly determined that, under the test, it was not an employer because it did not control the job site or the temporary worker. We agree with Tradesmen.

Washington courts use the "economic realities test" in cases of leased or temporary workers to determine who is an employer for the purposes of a WISHA citation. Potelco, 191 Wn. App. at 30-31. The test involves seven factors:

1) who the workers consider their employer;

2) who pays the workers' wages;

3) who has the responsibility to control the workers;

4) whether the alleged employer has the power to control the workers;

5) whether the alleged employer has the power to fire, hire, or modify the employment condition of the workers;

6) whether the workers' ability to increase their income depends on efficiency rather than initiative, judgment, and foresight; and

7) how the workers' wages are established.

Id. at 31. Under this test, "[t]he key question is whether the employer has the right to control the worker." Id. at 31. The record lacks evidence on the first and sixth factors.[3] We address the remaining factors in turn.

_____

[3] The Department asserts that the first factor shows Tradesmen was an employer for the purposes of the citation. But the Department's argument under this factor is that the temporary worker believed Tradesmen to be his employer because Tradesmen hired him, leased him to Dochnahl, and he could call his Tradesmen supervisor with questions. These points fail to address who the temporary worker considered as his

*Payment of Wages*

Under the CSA, Tradesmen agreed to pay the temporary worker wages owed for work under the agreement. This factor suggests Tradesmen was an employer with respect to the citation.

*Responsibility to Control the Worker*

Dochnahl, not Tradesmen, had the responsibility to control the worker under their contract. In the CSA, Dochnahl agreed that it would be "solely responsible for directing, supervising and controlling Tradesmen employees as well as their work" and "to provide Tradesmen workers a safe work environment that complies with all applicable Federal [Occupational Safety Hazard Act (OSHA)] and/or equivalent state agency standards." Because Dochnahl agreed to assume the responsibility for controlling the temporary worker assigned to it, this factor weighs against considering Tradesmen an employer.

*Power to Control the Worker*

Tradesmen had some control over the temporary worker as it controlled his work assignments. But the record shows Tradesmen had little control over the temporary worker's work and duties at the job sites. While Tradesmen would have a field representative inspect the job site for safety, it did not have any Tradesmen employees at the job site to supervise the temporary worker. Tradesmen lacked any authority to control Dochnahl's project or the work done there. That Dochnahl moved the temporary worker to a new job site without the

employer while at the Palatine Avenue job site, and thus do not sufficiently address the first factor.

10

temporary worker informing Tradesmen also shows Tradesmen's lack of control over the temporary worker.

Tradesmen also lacked control over the Palatine Avenue job site. Although the Department asserts that courts do not consider control over the job site as part of the economic realities test, legal authority holds otherwise. See Potelco, 191 Wn. App. at 32 (considering whether the alleged employer exercised control over the job site under the economic realities test). The Board has also previously noted that "in leased employment situations, whether the lessor or the lessee should be cited for WISHA violations depends on the economic realities of who controls the workplace. Both employers cannot be cited unless they both have *substantial control over the workers and the work environment* involved in the violations." In re Skills Res. Training Ctr., No. 95 W253, at 2 (Wash. Bd. of Ind. Ins. App. Aug. 5, 1997) (emphasis added). While Tradesmen typically inspected a job site to ensure it was safe, here it did not have a chance to do so because Dochnahl sent the temporary worker to the Palatine Avenue job site without notifying Tradesmen. This factor also weighs against Tradesmen being considered an employer.

*Power to Fire, Hire, or Modify the Employment Condition of the Worker*

Under the CSA, Dochnahl had the sole discretion to terminate a temporary worker from its employ. But only Tradesmen could fire a temporary worker from its staffing company. Tradesmen also lacked the power to modify the employment conditions of the temporary worker, as it did not control the "means and methods" of the temporary worker's performance. Finally, although

11

Tradesmen would inspect the job site for safety reasons, Dochnahl was responsible for providing a safe work environment and any specific safety training or equipment. While this factor presents a close question, because we must view the evidence and reasonable inferences therefrom in the light most favorable to Tradesman, it weighs against holding Tradesman liable as an employer.

*Establishment of Worker's Wage*

In the CSA, Tradesmen agreed to "determine and provide compensation, including wages and benefits." This factor supports Tradesmen being an employer.

Thus, the two factors relating to control—plus the factor relating to the power to hire, fire, or modify the employment condition of the worker—weigh against us considering Tradesmen an employer for purposes of the citation. The Department did not challenge the Board's finding that Tradesmen did not control the job site or the work environment at the Palatine Avenue job site. Unchallenged findings of fact constitute verities on appeal. Potelco, 191 Wn. App. at 22. While two other factors support Tradesmen being an employer, as stated above, the key question of the test is who had the right to control the worker.

We determine substantial evidence supports the Board's findings that Tradesmen did not have control over the temporary employee when at a job site for Dochnahl and did not control the Palatine Avenue job site. And the Board's

findings support its conclusion that the Department could not cite Tradesmen as an employer for the WISHA violations.[4]

We affirm.

_Chun, J._

WE CONCUR:

_Smith, J._ _Dwyer, J._

---

[4] This outcome tracks Board and Occupational Safety and Health Commission cases that have addressed similar facts.  See Skills Res. Training Ctr., slip op. at 4 (determining that a company that provided workers to employers "operated as a human resources department" and was not an employer under WISHA); Union Drilling, 16 OSHC 1741 (No. 93-154, 1994) (deciding that although the company providing the personnel paid the workers and controlled their work assignments, it was not an employer for WISHA purposes); Murphy Enterprises, dba Murphy Brothers Exposition, 17 OSHC 1477 (No. 93-2957, 1995) (noting that an employee leasing company was not an employer under WISHA even though it handled payroll and other administrative tasks); MLB Indus., Inc., 12 OSHC 1525 (No. 83-231, 1985) (concluding that a company was not liable as an employer under WISHA because it merely served as a "conduit for labor").