# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| PENINGTON PAINTING COMPANY, LLC, | No. 57003-3-II |
| Appellant, | |
| v. | |
| WASHINGTON STATE DEPARTMENT OF LABOR AND INDUSTRIES, | UNPUBLISHED OPINION |
| Respondent. | |

VELJACIC, J. — Penington Painting Company appeals a decision of the Board of Industrial Insurance Appeals (Board) affirming two Department of Labor & Industries (Department) citations for serious violations of fall protection regulations. Because substantial evidence supports the Board's findings, we affirm.

## FACTS

### I. THE INCIDENT LEADING TO PENINGTON'S FALL PROTECTION CITATIONS

On August 2, 2019, two Penington workers, Juan Galindo and Damian Collins, were painting the exterior of a multi-story building in the Tacoma Mall parking lot. The first floor of the building has a larger footprint than the floors above it, so the roof of the first floor acts like a platform wrapping around the perimeter of the building. The Penington workers used a swing stage located on the first floor roof for this painting project. To access the swing stage, Penington planned to use a boom lift to hoist its workers up to the first floor roof.

On August 2, Galindo and Collins were the only workers, of six, to report to the jobsite, but neither of them had the key to operate the boom lift as planned. Galindo called his supervisor, Jim Justice, to ask if he had the key. Justice stated that he did and instructed Galindo to use the ladder at the jobsite until he arrived with the boom lift key. Galindo and Collins climbed the ladder, stepped onto the first floor roof, tied off a rope to their safety harnesses, and walked to the swing stage to conduct the day's work. They had all of the necessary fall protection equipment at the jobsite, including personal protection equipment (PPE), safety harnesses, lanyards, helmets, goggles, gloves, rope, and cable.

About two or three hours later, Galindo and Collins decided to take a break and brought the swing stage back down to the first floor roof. However, they discovered that the ladder was not where they had left it. Galindo then disconnected his fall protection equipment and walked around the corner of the building to find the ladder.

While walking on the opposite side of the building from the swing stage, Galindo saw James Heishman, the bureau chief of patrol for the Pierce County Sheriff's Department, leaving the building and asked for his assistance. Below are pictures depicting Galindo and Collins standing near the edge of the roof and the approximate location where they were observed:





Clerk's Papers (CP) at 576, 578. Heishman observed that Galindo and Collins were standing "[j]ust towards the edge of the building, so when [he] looked up they were right above [him]." CP at 349. In fact, Heishman stated that he could see the workers' upper torsos and believed that they were closer than 10 feet to the edge. Heishman found the ladder laying neatly on the sidewalk, placed it against the building, and left the scene.

3

At the same time, Gregg Garcia and Brian Walsh, both Compliance Safety and Health Officers (CSHOs) for the Department, were in the Tacoma Mall parking lot dropping off a vehicle at the Goodyear Tire Center. The Goodyear Tire Center was approximately 300 yards from the building where Galindo and Collins were painting. As the CSHOs were driving through the parking lot, they observed Galindo and Collins standing on the first floor roof without employing fall protection equipment. The CSHOs took pictures of Galindo and Collins that showed them standing close to the edge without employing any type of fall protection. Because the CSHOs observed an "immediate danger hazard," they stopped and opened a safety inspection. CP at 356.

Garcia spoke with Galindo and asked if he had the authority to provide consent to a safety inspection. Galindo indicated that he did not and he called Justice on his cell phone. Garcia then spoke with Justice on Galindo's cell phone and Justice indicated that he was at a different jobsite, but would arrive shortly thereafter for the safety inspection. Justice arrived to the jobsite about 25 minutes later.

During the safety inspection, the CSHOs measured the first floor roof near where Galindo and Collins were seen standing to be 14 feet 6 inches above the ground. Garcia stated that, had the workers fallen from this height, they could have suffered serious bodily injury or death.

Garcia also asked for the fall protection work plan. Justice produced the fall protection work plan after he arrived, which was located in the work shed at the jobsite. Garcia stated that the fall protection work plan was incomplete because it did not "identify any specific fall protection PPE that would be used for worker protection whether they were on the swing stage or whether they were on a walking-working surface." CP at 397.

II.     PROCEDURAL HISTORY

On August 27, the Department cited Penington for a serious violation of former WAC 296-155-24609(1) (2016), *repealed by* Wash. St. Reg. 20-12-091 (effective October 1, 2020),[1] based on the workers' failure to use fall protection equipment when standing near the leading edge of a walking-working surface.[2]  The Department also cited Penington for a serious violation of former WAC 296-155-24611(2)(a) (2016), *repealed by* Wash. St. Reg. 20-12-091 (effective October 1, 2020),[3] based on its failure to describe the method of fall arrest or fall restraint to be provided to its workers in its fall protection work plan.   The Department assessed a total penalty of $7,200.

---

[1] The fall protection standards contained in former chapter 296-155 WAC were amended and consolidated into chapter 296-880 WAC.  *See* Wash. St. Reg. 20-12-091.  Former WAC 296-155-24609 is now set out in WAC 296-880-20005.

Former WAC 296-155-24609(1) provided that an employer "shall ensure that the appropriate fall protection system is provided, installed, and implemented according to the requirements in this part when employees are exposed to fall hazards of four feet or more to the ground or lower level when on a walking/working surface."  Relevant here, an appropriate "fall protection system" includes a "fall restraint system" or a "personal fall arrest system."  Former WAC 296-155-24609(2)(iii)(b), (c).  A "walking/working surface" is defined as "any area including, but not limited to, floors, a roof surface, bridge, the ground, and any other surfaces whose dimensions are forty-five inches or more in all directions, through which workers can pass or conduct work."  Former WAC 296-155-24603 (2016).

[2] Garcia testified that a "leading edge" is the "edge of the walking-working surface where the roof ends."  CP at 396.  In this case, the leading edge was the entire perimeter of the first floor roof.

[3] As discussed above, the fall protection standards contained in former chapter 296-155 WAC were amended and consolidated into chapter 296-880 WAC.  *See* Wash. St. Reg. 20-12-091.  Former WAC 296-155-24611 is now set out in WAC 296-880-10020.

Former WAC 296-155-24611(2) required employers to "develop and implement a written fall protection work plan including each area of the work place where the employees are assigned and where fall hazards of ten feet or more exist."  Relevant here, the fall protection work plan "shall . . . (ii) Describe the method of fall arrest or fall restraint to be provided."  Former WAC 296-155-24611(2)(a).

On September 16, Penington appealed the two citations.  On December 3, the Department issued a corrected notice of redetermination affirming its citations, but lowering the total penalty imposed to $4,800.

On December 10, Penington appealed the corrected notice of redetermination to the Board. At the administrative hearing, Penington argued that affirming the citation for former WAC 296-155-24609(1) would impermissibly hold it strictly liable for Galindo's and Collins's reaction to an unforeseeable emergency situation—the missing ladder.  Penington also argued Galindo and Collins were not exposed to a fall hazard because they maintained a safe distance from the leading edge.  Penington further argued that it had implemented an in-depth training program on proper fall protection procedures and had no reason to know these workers were violating safety regulations.  Penington also asked the Board to vacate its citation for violating former WAC 296-155-24611(2)(a) or reclassify it as de minimis because "a fall protection work plan was created, and [] Galindo and [] Collins used fall protection and were not exposed to any fall hazards."  CP at 132.  Notably, Penington did not raise the affirmative defense that any of its fall protection violations were the result of unpreventable employee misconduct, which includes an analysis of foreseeability of the misconduct.

On February 26, 2021, the industrial appeals judge (IAJ) entered a proposed decision and order affirming the corrected notice of redetermination.  The IAJ found that Galindo and Collins were exposed to a fall hazard.  The IAJ also found that Penington knew or could have known of the safety violation based on its identification of the fall hazard and the fact that its workers were in plain view when they committed the safety violation.  The IAJ further found that

> Justice knew that Penington['s] operational and safety plans could not be followed because these plans were based upon the use of the boom lift.  Therefore, I find that the emergency circumstance or unplanned operation began at the start of the work day, not just when the ladder was moved.  [] Justice could have traveled to the

6

Tacoma Mall worksite [sic] and created a modified safety plan to adapt to the new problems which developed at the work site before the workers started their job task. However, [] Justice choose not the travel to [the] Tacoma Mall work site. Instead, he authorized the use of the ladder without further planning.

CP at 30.

On April 13, Penington filed a petition for review of the proposed decision and order to the Board. On April 26, the Board denied Penington's petition and the proposed decision and order became the decision and order of the Board.

On May 11, Penington appealed the Board's order denying its petition for review to the superior court. On May 20, 2022, the superior court entered an order affirming the Board's order. Penington appeals.

## ANALYSIS

Penington argues that the Board's order finding that it committed serious violations of former WAC 296-155-24609(1) and former WAC 296-155-24611(2)(a) must be reversed because it is not supported by substantial evidence. We disagree.

I.  STANDARD OF REVIEW

The Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, governs our review of a Board decision. *Bayley Constr. v. Dep't of Labor & Indus.*, 10 Wn. App. 2d 768, 781, 450 P.3d 647 (2019); RCW 49.17.150(1). "In an appeal of the superior court order affirming the decision of the Board, we review the Board's decision directly, based on the record before the Board." *Id*. at 782.

In a WISHA appeal, the Board's findings of fact are conclusive if supported by substantial evidence. *Ostrom Mushroom Farm Co. v. Dep't of Labor & Indus*., 13 Wn. App. 2d 262, 271, 463 P.3d 149 (2020). Evidence is substantial if it is sufficient in quantity to persuade a fair-minded person of its truth. *Id*. We view the evidence and all reasonable inferences that can be drawn from

that evidence in favor of the party that prevailed in front of the Board, here, the Department. *Id*. If there is substantial evidence to support the findings of fact, we then determine whether those findings support the Board's conclusions of law. *Id*.

We do not reweigh the evidence on appeal. *Id*. The possibility of drawing inconsistent conclusions from the evidence does not prevent an administrative agency's findings of fact from being supported by substantial evidence. *Id*. at 271-72.

We construe WISHA liberally to reflect the purpose of providing safe working environments to workers in Washington. *Id*. at 272; RCW 49.17.010. We give substantial weight to the Department's interpretation of statutes and regulations within its area of expertise and will uphold that interpretation if doing so does not contradict the legislative intent. *Ostrom Mushroom Farm Co*., 13 Wn. App. 2d at 272. We review the conclusions of law de novo. *Id*.

## II.  LEGAL PRINCIPLES

The Department bears the initial burden of proving a WISHA violation. WAC 263-12-115(2)(b); *Ostrom Mushroom Farm Co*., 13 Wn. App. 2d at 272.

> To establish a serious violation of a WISHA safety regulation, the Department must prove (1) the cited standard applies, (2) the requirements of the standard were not met, (3) employees were exposed to or had access to the violative condition, (4) the employer knew or through the exercise of reasonable diligence could have known of the violative condition, and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.

*Ostrom Mushroom Farm Co*., 13 Wn. App. 2d at 272. Here, Penington only challenges the evidence supporting the exposure and knowledge elements, that is, elements (3) and (4).

The Department must prove the exposure element with evidence that the workers "'were exposed to, or had access to, the violative condition.'" *Shimmick Constr. Co., Inc. v. Dep't of Labor & Indus*., 12 Wn. App. 2d 770, 785, 460 P.3d 192 (2020) (internal quotation marks omitted) (quoting *Wash. Cedar & Supply Co., Inc., Dep't of Labor & Indus*., 119 Wn. App. 906, 914, 83

P.3d 1012 (2003)). "To establish employee access, the Department must show by '*reasonable predictability* that, in the course of [the workers'] duties, employees will be, are, or have been in the zone of danger.'" *Mid Mountain Contractors, Inc. v. Dep't of Labor & Indus.*, 136 Wn. App. 1, 5, 146 P.3d 1212 (2006) (alterations in original) (quoting *Adkins v. Alum. Co. of Am.*, 110 Wn.2d 128, 147, 750 P.2d 1257 (1988)). "'[T]he zone of danger is that area surrounding the violative condition that presents the danger to employees which the standard is intended to prevent.'" *Cent. Steel, Inc. v. Dep't of Labor & Indus.*, 20 Wn. App. 2d 11, 22, 498 P.3d 990 (2021) (internal quotation marks omitted) (quoting *Shimmick Constr. Co.*, 12 Wn. App. 2d at 785), *review denied*, 199 Wn.2d 1020 (2022).

As to the knowledge element, the Department may prove employer knowledge with evidence of either actual or constructive knowledge. *Pro-Active Home Builders, Inc. v. Dep't of Labor & Indus.,* 7 Wn. App. 2d 10, 18, 465 P.3d 375 (2018). "In general, constructive knowledge is established where the employer in the 'exercise of reasonable diligence' could have become aware of the condition." *Id*. (quoting former RCW 49.17.180(6) (2018)). "'Reasonable diligence' includes the obligation of an employer to inspect the work site, anticipate hazards that employees may be exposed to, and take measures to prevent the occurrence of a violative condition." *Bayley Constr.*, 10 Wn. App. 2d at 783 (quoting *Erection Co., Inc. v. Dep't of Labor & Indus.*, 160 Wn. App. 194, 206-07, 248 P.3d 1085 (2011)). "Constructive knowledge may be demonstrated by the Department in a number of ways, including evidence showing that the violative condition was readily observable or in a conspicuous location in the area of the employer's crews." *Pro-Active Home Builders*, 7 Wn. App. 2d at 18. The Department may also show constructive knowledge with evidence that a violation was in plain view of the public. *Potelco, Inc. v. Dep't of Labor & Indus.*, 7 Wn. App. 2d 236, 244-46, 433 P.3d 513 (2018).

However, "[t]o establish the knowledge requirement of a WISHA violation, the Department does not bear the burden to prove that the violation was foreseeable." *Cent. Steel, Inc.*, 20 Wn. App. 2d at 19. Rather, the applicable standard is whether "'the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition.'" *Bayley Constr.*, 10 Wn. App. 2d at 783 (internal quotation marks omitted) (quoting *Potelco, Inc. v. Dep't of Labor & Indus.*, 191 Wn. App. 9, 34, 361 P.3d 767 (2015)).

III.    FORMER WAC 296-155-24609(1)

Former WAC 296-155-24609(1) provided that an employer "shall ensure that the appropriate fall protection system is provided, installed, and implemented according to the requirements in this part when employees are exposed to fall hazards of four feet or more to the ground or lower level when on a walking/working surface." Relevant here, an "appropriate fall protection system" includes a "fall restraint system" or a "personal fall arrest system." Former WAC 296-155-24609(2)(iii)(b), (c). A "walking/working surface" is "[a]ny area including, but not limited to, floors, a roof surface, bridge, the ground, and any other surfaces whose dimensions are forty-five inches or more in all directions, through which workers can pass or conduct work." Former WAC 296-155-24603 (2016).

A.      Constructive Knowledge of the Safety Violation[4]

Penington argues that the Board's finding that Penington had constructive knowledge of its workers violating former WAC 296-155-24609(1) is not supported by substantial evidence. We disagree.

Here, substantial evidence supports the Board's finding that Penington had constructive knowledge of its workers' safety violations because their actions occurred in plain view. Garcia and Walsh testified that they went to the Goodyear Tire Center in the Tacoma Mall parking lot, which was approximately 300 yards from the building that Galindo and Collins were painting. As Garcia and Walsh were driving through the parking lot, they noticed Galindo and Collins standing on the first floor roof without employing fall protection equipment. Garcia and Walsh then took pictures documenting the Penington workers' actions. The pictures, admitted as exhibits at the administrative hearing, clearly showed Galindo and Collins standing close to the edge of the first floor roof without employing any type of fall protection. Because their safety violations were

---

[4] As an initial matter, Penington argues that "[t]he Board's finding that the emergency circumstances or unplanned operations began at the start of the workday when [] Galindo and [] Collins did not have the boom lift key is unsupported by substantial evidence." Br. of Appellant at 15. In so arguing, Penington contends that the finding is relevant to explain Galindo's and Collins' reaction to an unforeseeable emergency situation (the missing ladder), which in turn undercuts the Board's knowledge finding. However, we need not address Penington's challenge to the Board's emergency circumstances finding because, as explained above, foreseeability is irrelevant to the knowledge inquiry.

We note that such an argument would fail in any event. The record shows that Penington's work plan involved using the boom lift to hoist up its workers up to the first floor roof to access the swing stage. However, on August 2, 2019, Galindo and Collins were the only workers to report to the jobsite and neither of them had the key to the boom lift. At the beginning of the work day, Justice knew of this fact but instructed Galindo to use the ladder at the jobsite until he arrived with the key. Because the record shows that the Penington workers had to deviate from their original work plan in using the boom lift at the beginning of the work day, substantial evidence supports the Board's finding that "the emergency circumstance or unplanned operation began at the start of the work day, not just when the ladder was moved." CP at 30.

11

readily apparent to the CSHOs in the Tacoma Mall parking lot, which is an area open to the public, we conclude that substantial evidence supports the Board's finding that Penington had constructive knowledge of the safety violation.

Penington argues that substantial evidence does not support the Board's finding that it had constructive knowledge of its workers' safety violations because of the efforts it took to train its employees, to inspect the work area, and to prevent fall protection violations from occurring. Penington argues that these efforts make it apparent that it could not foresee, despite its due diligence, that the ladder would go missing and "force" its workers to unhook themselves from their fall protection. Br. of Appellant at 30. We disagree.

Here, Penington's argument fails because the applicable standard is whether "'the employer knew or, through the exercise of reasonable diligence, could have known of the violative condition.'" *Bayley Constr*., 10 Wn. App. 2d at 783 (internal quotation marks omitted) (quoting *Potelco*, 191 Wn. App. at 34). "[T]he Department does not bear the burden to prove that the violation was foreseeable." *Cent. Steel, Inc.*, 20 Wn. App. 2d at 19. Rather, once the Department established a prima facie case of a WISHA violation, the burden shifted to Penington to establish that Galindo's and Collins's conduct amounted to unpreventable employee misconduct to avoid the safety violation. *Id.* at 19-20. To show unpreventable employee misconduct, the employer must establish the following four statutory elements:

> (i) A thorough safety program, including work rules, training, and equipment designed to prevent the violation;
> (ii) Adequate communication of these rules to employees;
> (iii) Steps to discover and correct violations of its safety rules; and
> (iv) Effective enforcement of its safety program as written in practice and not just in theory.

RCW 49.17.120(5)(a). Thus, Penington's reliance on the training it offered to its workers, the effectiveness of its safety program, and the efforts it took to inspect the jobsite would only be

relevant if it properly raised the affirmative defense before the Board. *See Cent. Steel, Inc.*, 20 Wn. App. 2d at 20-21. However, Penington did not raise this affirmative defense before the Board; rather, in its petition for review of the proposed decision and order, Penington merely asserted that the intervening event was not foreseeable. Again, foreseeability is immaterial. *Id*. at 21 n.7. But more to the point, Penington's foreseeability argument does not undermine the substantial evidence supporting the Board's findings.

Because Penington did not raise the affirmative defense of unpreventable employee misconduct, its reliance on the training it offered to its workers, the effectiveness of its safety program, and the efforts it took to inspect the jobsite is immaterial. Accordingly, this argument fails.

Penington appears to argue that the Board erred in finding that the safety violation occurred in plain view because there were no Penington foremen or supervisory agents at the work site. We disagree because a safety violation occurring "in plain view of the public" is sufficient to establish constructive knowledge. *Potelco, Inc*., 7 Wn. App. 2d at 245.

Penington also argues that "the Board's affirmance of the fall protection violations under the unique facts of this case held Penington to a strict liability standard, as the mysterious disappearance of the ladder was an unforeseen circumstance that could not have been predicted or prevented." Br. of Appellant at 32. We disagree because it is well established that requiring the Department to prove either actual or constructive knowledge of the violations eliminates any risk of strict liability, which was done here as explained above. *Cent. Steel, Inc.*, 20 Wn. App. 2d at 20-21; *Potelco*, 191 Wn. App. at 33-34. Accordingly, this argument fails.

We conclude that the Board's finding that Penington had constructive knowledge of its workers' safety violations is supported by substantial evidence.

13

B.    Employee Exposure to a Violative Condition

Penington argues that the Board's decision is not supported by substantial evidence because Galindo and Collins were not exposed to danger caused by their failure to employ fall protection. Penington's argument is premised on Galindo's testimony that he and Collins were not within the zone of danger because they maintained a 10-foot distance from the roof's leading edge. We disagree.

Here, Penington's argument fails because it impermissibly asks us to reweigh the evidence on appeal by accepting Galindo's testimony and rejecting other evidence to the contrary. *Ostrom Mushroom Farm Co.*, 13 Wn. App. 2d at 271. As discussed above, the record shows that the CSHOs observed and photographed both Galindo and Collins standing close to the edge of the first floor roof without employing fall protection equipment. The danger observed by the CSHOs was a fall hazard of 14 feet 6 inches, which Penington does not dispute. Additionally, Heishman's testimony demonstrates that Galindo and Collins were actually exposed to a fall hazard because he observed them standing "[j]ust towards the edge of the building, so when [he] looked up they were right above [him]." CP at 349. In fact, Heishman stated that Galindo and Collins were standing so close to the edge that he could see their entire upper torsos.

Because the record demonstrates that Galindo and Collins were in the zone of danger without employing fall protection equipment, we conclude that substantial evidence supports the Board's finding that Galindo and Collins were actually exposed to a fall hazard addressed in former WAC 296-155-24609(1)—a fall hazard of four feet or more.

Next, Penington relies on *In re Hawkeye Construction, Inc*, No. 06 W0030, 2007 WL 3054898 (Wash. Bd. of Indus. Ins. Appeals July 30, 2007), and various Federal Occupational Safety & Health Review Commission decisions to support its argument that it was not reasonably

predictable that Galindo and Collins would be in the zone of danger given that they maintained a safe distance from the leading edge and had no reason to get any closer to the leading edge. We reject Penington's reliance on these administrative decisions because, as explained above, Galindo and Collins were *actually* exposed to a fall hazard given Heishman's testimony and the photographs in the record showing them in close proximity to leading edge of the first floor roof without employing fall protection. Whether it would have been reasonably predictable that Galindo and Collins would enter the zone of danger is not relevant to whether the workers were actually within the zone of danger, the relevant consideration for this factor.

We conclude that the Board's finding that Galindo and Collins were exposed to a fall hazard is supported by substantial evidence.

IV.     FORMER WAC 296-155-24611(2)(a)

Penington argues that the Board's decision finding that it committed a serious violation of former WAC 296-155-24611(2)(a) is not supported by substantial evidence and "should be vacated, or reclassified as de minimis, because a fall protection work plan was created, and [] Galindo and [] Collins used fall protection and were not exposed to any fall hazards." Br. of Appellant at 44. We disagree.

> As discussed above, to establish a "serious violation" of a WISHA safety regulation,
>
> the Department must prove (1) the cited standard applies, (2) the requirements of the standard were not met, (3) employees were exposed to or had access to the violative condition, (4) the employer knew or through the exercise of reasonable diligence could have known of the violative condition, and (5) there is a substantial probability that death or serious physical harm could result from the violative condition.

*Ostrom Mushroom Farm Co*., 13 Wn. App. 2d at 272. On the other hand, "[a] de minimus violation is one that has 'no direct or immediate relationship to safety or health.'" *Wash. Cedar & Supply Co, Inc.*, 119 Wn. App. at 918 (quoting RCW 49.17.120(2)).

Former WAC 296-155-24611(2) required employers to "develop and implement a written fall protection work plan including each area of the work place where the employees are assigned and where fall hazards of ten feet or more exist." The fall protection work plan "shall . . . (ii) Describe the method of fall arrest or fall restraint to be provided." Former WAC 296-155-24611(2)(a).

Here, substantial evidence supports the Board's finding that Penington committed a serious violation of former WAC 296-155-24611(2)(a). First, although Penington created a fall protection work plan, it failed to meet the requirements of former WAC 296-155-24611(2)(a) because it failed to describe the method of fall arrest or fall restraint to be provided to its workers at the Tacoma Mall jobsite.[5] Second, as explained above, Galindo and Collins were actually exposed to a fall hazard of 14 feet 6 inches because the evidence established that they were in the zone of danger without employing any fall protection. Third, the record shows that Penington knew or should have known about the fall protection work plan's deficiencies because it was created by Penington and was located in the work shed at the jobsite. Finally, Penington provides no argument to the contrary that a substantial probability existed that Galindo and Collins could have suffered serious physical harm from a fall of 14 feet 6 inches.

Based on the foregoing, we conclude that the substantial evidence supports the Board's finding that Penington's fall protection work plan violation was "serious" as opposed to "de minimis."

---

[5] Penington does not allege that the cited standard does not apply or that the standard was not met.

CONCLUSION

We affirm the Board's order affirming the Department's corrected notice of redetermination finding that Penington committed serious violations of former WAC 296-155-24609(1) and former WAC 296-155-24611(2)(a).

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Veljacic, J.

We concur:

_____
Glasgow, C.J.

_____
Cruser, J.